**DRAVO CORPORATION, a
Pennsylvania corporation,
Plaintiff,**

**v.**

**WHITE CONSOLIDATED INDUSTRIES,
INC., a Delaware corporation,
Defendant.**

Civ. A. No. 83–2769.

United States District Court,
W.D. Pennsylvania.

Feb. 5, 1985.

Edward F. Welsh, Anne B. Shearon, Parmelee, Miller, Welsh & Kratz, P.C., Pittsburgh, Pa., for plaintiff.

Raymond G. Hasley, Dennis M. Morgenstern, Pittsburgh, Pa., for defendant.

## OPINION

MANSMANN, District Judge.

This matter comes before the Court on Defendant's "Motion To Dismiss Pursuant Rule 12(b)(6), or, Alternately Rule 56 of the Federal Rules of Civil Procedure." For the reasons set forth below, Defendant's Motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dravo Corporation ("Dravo") is a Pennsylvania corporation which prior to 1973 had been engaged in the engineering and construction businesses, with major emphasis on projects in the civil minerals and mining fields. In early 1973, apparently to diversify its interests, Dravo became interested in the chemical and food-processing fields. To this end, it negotiated with Defendant White Consolidated Industries ("White Consolidated"), a Delaware corporation, and eventually purchased the business, technology and assets of two of its second-tier wholly-owned subsidiaries, Blaw-Knox Chemical Plants, Inc. and Blaw-Knox of Canada, Limited. The acquisition became effective on May 1, 1973, the date the agreement ("Acquisition Agreement") was executed.

By the terms of the Acquisition Agreement, Dravo paid White Consolidated a total consideration of $8,320,000. The parties determined the individual assets involved in this transaction to be as follows [1]:

| | |
|---|---|
| Net Current Assets | $ 395,063 |
| Machinery and Equipment and Improvements to Leased Property | 572,700 |
| Technical Library | 27,300 |
| Drawings and Tracings | 3,290,000 |
| Patents and License Agreements | 1,028,000 |
| Trademarks | 125,000 |
| Computer Programs | 75,000 |
| Five-Year Non-Competition Agreement | 2,500,000 |
| Accumulated Research Assembled Technical Staff Other Intangible Assets Including Goodwill | 306,937 |
| TOTAL | $8,320,000 |

In addition to assuming the assets of these two subsidiaries of White Consolidated, Dravo assumed certain liabilities, including White Consolidated's on-going obligation under 40 in-process contracts, five of which are at issue instantly. These are the Far-Mar-Co., Inc. ("Far-Mar-Co."), the Melaport (two), the Casa Grande (two) and the Lauhoff grain contracts.

With respect to the Far-Mar-Co. contract (which involved a soy bean protein concentrate plant in Missouri), Dravo asserts that at the time of the acquisition, White Consolidated represented to it that the Far-Mar-Co. contract was 98.4% completed, with approximately $10,000 in costs incident thereto which was to be offset by approximately $10,000 of additional revenue. Prior to completion, however, numerous difficulties apparently ensued and Dravo claims that it attempted to resolve these with Far-Mar-Co. Ultimately, in September of 1978, Far-Mar-Co. sued Dravo in the United States District Court for the Western District of Missouri.

At the time Far-Mar-Co. commenced suit against it, Dravo claims that it promptly notified White Consolidated of the action and offered it the opportunity to defend as required by Article 5(b) of the Acquisition Agreement.[2] More specifically, Dravo, by

---

1. *See* Exhibit N to the Acquisition Agreement.

2. Article 5(b) of the Acquisition Agreement provides:

(b) Sellers shall indemnify and save Buyer harmless from and against any and all liability, damage and loss, including attorneys' fees, aris-

the letter of Ernest A. Carpenter dated October 13, 1978 to Daniel R. Elliott, Jr., notified White Consolidated of the action, included a copy of the Far-Mar-Co. complaint and gave White Consolidated an opportunity to defend.

White Consolidated responded by letter of Daniel R. Elliott, Jr. dated October 23, 1978. In its letter, White Consolidated denied all responsibility under the Far-Mar-Co. contract and asserted that the notice requirements as set forth in Article 5(b) had not been met. In addition, White Consolidated made certain demands on Dravo and because of Dravo's subsequent rejection of these demands, White Consolidated claimed that under ¶¶ 5a and 5c of the agreement that Dravo must indemnify and hold White Consolidated harmless from any responsibility resulting from the litigation in Missouri.

Other letters were exchanged between the parties, and ultimately Dravo opted to conduct its defense without White Consolidated as a party.

Subsequently, in July of 1982, a jury verdict in the amount of $155,000 was rendered against Dravo in the Far-Mar-Co. action. This suit was eventually settled for this amount without appeal and it was not until this resolution that Dravo sought relief against White Consolidated.

On April 27, 1979 Dravo filed a praecipe for writ of summons against White Consolidated in the Common Pleas Court of Allegheny County, Pennsylvania. It is uncontroverted that White Consolidated never filed a demand for a complaint, and it was not until October 13, 1983 (after the Far-Mar-Co. action was settled), that Dravo filed a complaint against White Consolidated.[3] On the petition of White Consolidated, this action was removed to federal court based upon diversity of citizenship.

Prior to the service of an answer, White Consolidated moved this Court for an order dismissing this action pursuant to FED.R.CIV.P. 12(b)(6) or alternately pursuant to FED.R.CIV.P. 56, claiming, *inter alia,* that this action is barred by the applicable statutes of limitations. In this regard, White Consolidated claims that it is the four year statute of limitations contained in Article 2 of the Uniform Commercial Code, specifically 13 PA.CONS.STAT. § 2725 (Purdon 1984) applies, as it claims that the acquisition was a sale of "goods", or at least essentially a sale of "goods". Dravo, in contrast, asserts that the assets involved are not "goods" and submits that the six year statute of limitations set forth in 42 PA.CONS.STAT. § 5527(2) (Purdon 1981) applies, as this is an action for indemnification and breach of contract, to which the Uniform Commercial Code is not applicable.

In any event, White Consolidated further claims that under *any* statute of limitations the instant action is time-barred as it asserts that the praecipe for writ of summons does not commence an action and thus is

---

ing out of or in connection with any breach of covenant or agreement hereunder by Sellers or any of them, or out of or in connection with any inaccurate or incorrect representation or warranty or stipulation of Sellers or any of them contained herein, or out of or in connection with the failure of Sellers to have secured on or prior to the Closing Date any of the consents described in Section 11(e) hereof, and Sellers shall indemnify and save Buyer harmless from and against any and all claims, liabilities or obligations whatsoever, except those expressly assumed by Buyer under Section 5(a)(i) and (ii) hereof, resulting from the ownership of the Assets or the conduct of the Business prior to the Closing Date, provided Buyer shall give prompt written notice thereof to BK, and provided further that the Buyer shall, at the same time of giving such notice, give BK full authority to defend, adjust, compromise or settle the action, suit, proceeding or demand of which such notice shall have been given, in the name of Buyer or otherwise as BK shall elect.

**3.** This complaint contains nine separate counts involving the in-process contracts noted above. Specifically, these counts are as follows:

I: Far-Mar-Co. (breach of warranty); II: Far-Mar-Co. (breach of contract); III: Casa Grande (breach of warranty); IV: Casa Grande (breach of contract); V: Lauhoff Grain (breach of warranty); VI: Lauhoff Grain (breach of contract); VII: Melaport (breach of warranty); VIII: Melaport (breach of contract); and IX: all contracts (trespass).

not effective in tolling the statute of limitations. Dravo vehemently disputes this.

Finally, White Consolidated claims that irrespective of what limitations period applies, because it claims that Dravo failed to give the notice required under the Acquisition Agreement, that this action must be dismissed. Dravo denies this, and claims, at the very least, that this issue is a question which cannot be resolved on the current state of the record.

Thus, the immediate issues for resolution by this court are: (1) whether the praecipe for writ of summons had the effect of commencing the instant action; (2) which statutes of limitations apply; and (3) is the question of whether Dravo gave sufficient notice under the Acquisition Agreement resolvable at this stage, and if so, did Dravo give White Consolidated sufficient notice under the terms of the Acquisition Agreement.

## DISCUSSION

### (1) The Commencement of the Instant Action

Rule 1007 of the Pennsylvania Rules of Civil Procedure, 42 PA.CONS.STAT. Rule 1007 (Purdon 1975) ("Rule 1007") provides, *inter alia,* that "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for writ of summons ..."

Notwithstanding the clear language of the rule, White Consolidated argues that the action was not commenced until the Complaint dated October 13, 1983 was filed in Pennsylvania state court and submits that the Rule 1007 does not apply because this action was removed to federal court. This Court rejects these arguments.

Rule 1007 clearly states that the filing of a praecipe for writ of summons is one of three ways to commence an action [in a Pennsylvania state court]. Moreover, it is well established that such filing effectively tolls the statute of limitations. *See, e.g., Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976).

Although FED.R.CIV.P. 3 provides that "[a] civil action is commenced by filing a complaint with the court", in the case *sub judice,* since it originated in Pennsylvania state court and was removed to federal court only after it had been "commenced", this Court finds that this action was "commenced" on April 27, 1979, the date the praecipe for writ of summons was filed in Pennsylvania state court, not in October, 1983, the date the complaint was filed there. Of course, had this case not had its genesis in Pennsylvania state court, Rule 1007 would not apply.

### (2) The Applicable Statutes of Limitation
### *The Contract Claims*

In its first eight counts, Dravo has pleaded causes of action for breach of warranty claims (Counts I, III, V, VII) and breach of contract claims (Counts II, IV, VI, VIII). Dravo asserts that since these actions are founded upon contract, the applicable statute of limitations is 42 PA.CONS.STAT. § 5527(2) (Purdon 1981),[4] which provides a six year limitation period. Dravo further argues that since the causes of action did not accrue before the date of the Acquisition Agreement ("April 30, 1973"),[5] and since the praecipe for writ of summons was filed within the six year period (April 27, 1979), the contract portion of its action is timely. Additionally, Dravo submits that with respect to its indemnity claims, the operative date is when the loss occurred, thus clearly making the breach of contract claims timely on the instant facts. With respect to the breach of warranty claims, Dravo asserts a similar argument, and re-

---

**4.** Although amended in 1982, the version in effect at the commencement of this action provides in pertinent part:

§ 5527. Six year limitation
The following actions must be commenced within six years ...
(2) An action upon a contract, obligation or liability ... founded upon ... [an] instrument in writing, except an action subject to another limitation specified in this subchapter....

**5.** Although in other portions of the Motion papers this date is stated as May 1, 1973, because this one-day discrepancy is not significant here, the Court will neither make a distinction nor differentiate between the two.

lies on 13 PA.CONS.STAT. § 2725(b) (Purdon 1984), which provides that the cause of action accrues when the breach occurs, among other things.

White Consolidated argues that the applicable statute of limitations is found in Article 2 of the Uniform Commercial Code, specifically 13 PA.CONS.STAT. § 2725(a) (Purdon 1984),[6] which provides that an action for the sale of goods must be commenced within four years.

\* \* \* \* \* \*

In *DeFilippo v. Ford Motor Company*, 516 F.2d 1313 (3d Cir.1975), *cert. denied*, 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 141 (1975), the United States Court of Appeals for the Third Circuit found the acquisition of an automobile dealership to be the purchase of "goods"[7] and therefore to be governed by Article 2 of the Uniform Commercial Code. In doing so, the *DeFilippo* Court provided some guidance to a district court making such a determination. Specifically the *DeFilippo* Court stated, in order for the Uniform Commercial Code to be applicable, it is *not* necessary that every asset qualify as a "movable" item under § 2105:

> Rather than a view of mechanical technicality or of mathematical nicety, *a view of the reasonable totality of the circumstances should control the characterization of the contract for sale.* If, viewed as a whole, it can be concluded that the essential bulk of the assets to be transferred qualify as 'goods', then it is appropriate to consider the transaction a 'contract for the sale of goods'....
> *We believe it preferable to utilize a rule of reasonable characterization of the transaction as a whole.*

*Id.* at 1323. (Emphasis added).

The assets in the *DeFilippo* action were primarily inventory (motor vehicles) and equipment which the court characterized as "goods." After viewing "the transaction as a whole", and after scrutinizing the list of assets, the *DeFilippo* court concluded that the transfer at issue was essentially "a contract for the sale of goods." It therefore applied the appropriate provision of Article 2 of the Uniform Commercial Code.

Therefore, in conformity with the *DeFilippo* holding, in order for this Court to determine whether the Acquisition Agreement was essentially a "contract for the sale of goods," it is necessary to view the transaction as a whole by examining the assets transferred. Conveniently, the parties have categorized the individual assets,[8] and this Court will utilize their itemization.

With respect to the "drawings and tracings," the largest single asset listed, this Court finds that in this context these are not "goods" as defined in Article 2 of the Uniform Commercial Code. The significance of these items in this transaction is not their physical properties, but the ideas conveyed therein. In this connection, this Court notes that in *Department of Transportation v. Bethlehem Steel Corp.*, 28 Pa.Commw. 214, 368 A.2d 888 (1977) that the court similarly found bridge design plans not to be "goods" so as to implicate the Uniform Commercial Code.

With respect to the "five-year non-competition agreement", White Consolidated does not actually dispute that it is an item not covered by Article 2 of the Uniform Commercial Code, but instead asserts that the amount allocated to it "should be subtracted from the total purchase price ... since the covenant not to compete is a further obligation of the seller rather than

---

**6.** 13 PA.CONS.STAT. § 2725 (Purdon 1981) provides in pertinent part:
  (a) General Rule.—An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

**7.** As defined in the Uniform Commercial Code, "goods" "means all things ... which are mova-

ble at the time of identification to the contract for sale other than the money in which the price is to be paid ..." 13 PA.CONS.STAT. § 2105(a) (Purdon 1984).

**8.** *See* n. 1, *supra* for the amount allocated to the individual assets and the total price.

a transfer of a present asset."[9] This Court rejects this argument. The non-competition agreement is clearly an intangible not covered by Article 2 of the Uniform Commercial Code as, *inter alia*, it is neither "physical" nor "movable."

Therefore, considering these two assets which total over half of the purchase price of the acquisition, this Court finds that is inappropriate to characterize this transaction as a sale of "goods" since the "essential bulk of the assets" *does not* "qualify as 'goods'".[10] Accordingly, the statute of limitation set forth in 13 PA.CONS.STAT. § 2725 (Purdon 1984) is inapplicable here. Rather, the statute of limitation set forth in 42 PA.CONS.STAT. § 5527(2) (Purdon 1981) applies.

Since it is undisputed that the Acquisition Agreement was executed on April 30, 1973 or May 1, 1973,[11] and since this Court has found that this action was commenced on April 27, 1979, which date is within the six year period set forth in 42 PA.CONS. STAT. § 5527(2) (Purdon 1981), it is unnecessary to determine if the individual claims for indemnity and breach of warranty accrued on later date(s).

## THE TORT CLAIMS

In Count IX of the Complaint, Dravo has pleaded a cause of action in trespass. More specifically, Dravo alleges, *inter alia*, that White Consolidated made false and misleading representations and warranties (regarding the in-process contracts) in order to induce Dravo to enter into the Acquisition Agreement, and that Dravo relied upon these and has incurred damages as a result.

With respect to Count IX, this Court finds 42 PA.CONS.STAT. § 5527(6) (Purdon 1981) to be applicable.[12] Since this provides that an action under that section must be brought within six years, and since the instant action was brought within six years of the date of the Acquisition Agreement, and because the record is undeveloped with regard to when such representations were made, at this stage of the proceedings it would be premature to rule on the timeliness of the tort claim. However, if it is later demonstrated that the representations alleged in Count IX were made more than six years before the date this action was commenced (April 27, 1979), then White Consolidated could make further application to the Court.

Based on the foregoing, with respect to every count of this Complaint, the Motion to Dismiss of White Consolidated based upon the statutes of limitations is denied.

### (3) The Notice Requirements of the Acquisition Agreement

White Consolidated also argues that this action should be dismissed because it claims that Dravo did not give it the notice required under Article 5(b) of the Acquisition Agreement.

Without commenting on the merits of either party's arguments on this issue, and without determining if this is a legal question for the Court or a factual question for the trier of fact, or a mixture of the two, this Court finds that this question cannot be resolved on the current state of the record.

Accordingly, the Motion to Dismiss of White Consolidated based upon Dravo's

9. White Consolidated's Brief in Support at 13.

10. Therefore, this court need not and will not review the other assets acquired by Dravo to determine if they qualify as "goods" or "non-goods."

11. *See* n. 5, *supra.*

12. 42 PA.CONS.STAT. § 5527(6) provides:
   (6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.
   This Court notes that for actions commenced 60 days after December 20, 1982, 42 PA.CONS. STAT. § 5524(7) (which provides a two year statute of limitation) would be applicable. Because the commencement date of the instant action was prior to this time, 42 PA.CONS.STAT. § 5527(6) is applicable.

failure to give the required notice is denied.[13]

An appropriate Order shall issue.

---

13. This Court notes that White Consolidated has also asserted that Dravo failed to give the notice required by Article 2 of the Uniform Commercial Code. Since this Court has already found Article 2 to be inapplicable here, White Consolidated's argument will not be addressed further.