Dorothy R. CANNON,
Plaintiff–Appellant,

v.

The KROGER CO., et al.,
Defendants–Appellees.

No. 86–1720.

United States Court of Appeals,
Fourth Circuit.

Jan. 29, 1988.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING IN BANC.

The appellant's petition for rehearing and suggestion for rehearing in banc were submitted to this Court. [Prior report: 832 F.2d 303]

On the question of rehearing before the panel, Judge Smalkin, United States District Judge sitting by designation, voted to rehear the case. Judges Hall and Wilkinson voted to deny.

In a requested poll of the Court on the suggestion for rehearing in banc, Judges Widener, Phillips, and Murnaghan voted to rehear the case in banc; and Judges Winter, Russell, Hall, Sprouse, Ervin, Chap-

man, Wilkinson, and Wilkins voted against in banc rehearing.

As the panel considered the petition for rehearing and is of the opinion that it should be denied, and as a majority of the active circuit judges voted to deny rehearing in banc,

IT IS ORDERED that the petition for rehearing and suggestion for rehearing in banc are denied.

Entered at the direction of Judge Hall.

MURNAGHAN, Circuit Judge,
dissenting from the denial of rehearing *en banc:*

It is indeed unusual, if not extraordinary,[1] for a member of the Fourth Circuit Court of Appeals who disagrees with a panel opinion to continue to fight after rehearing *en banc* has been denied by the majority of the court. So far as my memory serves, I have had but one occasion to dissent from the denial of a rehearing *en banc* in over eight years on the court. Now I have a second occasion, because I perceive the court's failure to grant rehearing as a dangerous error that may entrench a mischievous and unjust decision.

Of course, my colleagues may simply conclude that my sight is distorted with the result that I view the issue in this case out of focus. If so, my rejoinder is that there has been a turning of the kaleidoscope for those who voted not to rehear *en banc,* throwing their collective view of the case askew. That is a serious indictment, and it behooves me to justify it by more than mere platitudes. Therefore, I turn to the facts of the controversy and to the dangerous departure from established principles involved in the majority panel opinion in *Cannon v. Kroger Co.,* 832 F.2d 303 (4th Cir.1987).

## I.

The plaintiff is a former employee of the defendant company and member of the de-

**1.** But not unprecedented. *See Falwell v. Flynt,* 805 F.2d 484 (4th Cir.1986) (Wilkinson, J., with Phillips, Sprouse & Ervin, JJ., dissenting from denial of rehearing *en banc*); *id.* at 489 (Winter, C.J., dissenting from denial of rehearing *en banc*).

fendant union. She is engaged in disputes (a) with her one-time employer over steps that led to termination of her employment on September 7, 1985, and (b) with her union for its alleged failure adequately to represent her in her dispute with the employer. The plaintiff, therefore, has brought a typical hybrid action under § 301 of the Labor Management Relations Act (LMRA), as amended, 29 U.S.C. § 185. Such an action, although federal in nature, may be commenced and prosecuted either in federal district court or in state court. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). If it is begun in state court, federal question jurisdiction will permit, but by no means require, removal to a federal district court.

The plaintiff commenced the action in a North Carolina state court of competent jurisdiction on March 7, 1986, six months to the day from the time the cause of action accrued. Before the decision in *DelCostello v. International Board of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), courts generally understood that the lacuna in the LMRA caused by the failure of Congress to include a limitations provision should be remedied by reference to the state law of limitations. However, *DelCostello*, in two consolidated cases initiated in federal district court, made it crystal clear that state statutes were an inappropriate reference point for ascertaining the applica-

ble statute of limitations for hybrid actions. Instead, the six month limitation period found in an analogous federal statute, § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), was to be applied.

The six month limitation period was complied with here to the day. In addition to obtaining the statutorily mandated summons from a North Carolina court on March 7, 1986, before the six months had expired, the plaintiff also on that date filed in the North Carolina court an application for leave to defer filing of a complaint for twenty days. In compliance with the North Carolina rules, the plaintiff's initial pleading stated the nature and purpose of the suit.[2] On March 27, 1986 a full-scale complaint was filed by the plaintiff.[3] The panel majority, and now, in effect, those judges who have voted against rehearing *en banc*, have ruled that, nevertheless, commencement was not timely because of Fed.R.Civ.P. 3, which states: "A civil action is commenced by filing a complaint with the court." The argument of the panel majority comes down to this:

1. A complaint, as the term is used in Fed.R.Civ.P. 3, was not filed within six months of the accrual of the action.

2. The uniformity mandated by the Supreme Court in *DelCostello* for hybrid

---

**2.** N.C.R. Civ.P. 3. Rule 3 provides that a civil action may be commenced *either* (a) by filing a complaint *or* (b) by the issuance of a summons when (1) the plaintiff files a pleading stating the nature and purpose of the action and requesting permission to file a complaint within twenty days, and (2) the court issues an order stating the nature and purpose of the action and granting the requested permission. The North Carolina court approved the request, finding it was "in compliance with the statute," and granted the twenty day extension.

The plaintiff's initial pleading, filed within the six month period, stated as the nature and purpose:

Recovery of damages and other relief by employee for Union's breach of its duty of fair representation and employer's breach of collective bargaining agreement under Section 301 of the Labor–Management Relations Act, 29 U.S.C. sec. 185.

It is clear that an action is *commenced* under the North Carolina rules when the initial plead-

ing is filed and the summons issued; failure to file a full complaint within the 20–day extension period would abate the action, but failure to serve the complaint on the defendant does *not* result in abatement. *Hasty v. Carpenter*, 40 N.C. App. 261, 252 S.E.2d 274, *cert. denied*, 297 N.C. 453, 256 S.E.2d 806 (1979). Under the rules, the failure to serve the defendant merely delays the time when the defendant must file his responsive pleading. *Id.* No such failure to serve occurred here.

**3.** In addition, North Carolina rules governing service of process required the plaintiff to serve on the defendant the complaint and summons within thirty days of the issuance of the summons. N.C.R.Civ.P. 4. The plaintiff here actually achieved service either on April 3, 1986 by mailing or on April 4, 1986 by personal delivery. Had the case been initiated in federal court, service would have been timely if accomplished much later, in July 1986, because Fed.R.Civ.P. 4(j) allows 120 days for service after the filing of the complaint.

actions would not be achieved if, under state procedure, a complaint need only be filed in state court six months *and* twenty days after the action had accrued.

**4.** To focus on the case properly, the fact that there has been a resort to a semantical approach by the panel majority should be appreciated. The panel majority claims to be compelled by a desire to bring about "uniform national procedures." *Cannon v. Kroger Co.,* 832 F.2d 303, 305 (4th Cir.1987). However, the uniformity desired by the Supreme Court, as expressed in *DelCostello,* is neither decreased by approaching the problem as I suggest, nor enhanced by taking the line the panel majority has adopted. By word play, replacing "commencing her action" with "filing of a complaint," thereby substituting the lesser for the greater, the panel majority has confused two essentially independent concepts. The Supreme Court in *DelCostello* repeatedly referred to the action of suing (*i.e.,* commencing the action), for example, to measure the end of a period for limitations purposes. 462 U.S. at 155, 157, 162, 166, 168, 172, 103 S.Ct. at 2285–86, 2286–87, 2289, 2291–92, 2292–93, 2294–95.

It would seem that the panel majority supposes that recognizing variant state methods of commencing actions would create a bugaboo of perhaps fifty varying time periods for limitations purposes, fracturing uniformity. Yet that is manifestly not the case. For example, of the five states in the Fourth Circuit, four essentially require the filing of a complaint to commence an action. *See* Md.R.Civ.P. 2–101 ("A civil action is commenced by filing a complaint with a court."); S.Car.R.Civ.P. 3(a) ("A civil action is commenced by filing and service of a summons and complaint."); W.Va.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). Virginia still distinguishes between suits in equity and actions at law, and provides different methods of commencement for each; but despite different nomenclature, the requirements appear similar to Fed.R.Civ.P. 3. *See* Va.Sup.Ct.R. 2:2 ("A suit in equity shall be commenced by filing a bill of complaint in the clerk's office. The suit is then instituted and pending as to all parties defendant thereto."); *id.* 3:3 ("An action [at law] shall be commenced by filing in the clerk's office a motion for judgment. The action is then instituted and pending as to all parties defendant thereto."). North Carolina, in whose court system the present case was commenced, is the only state in the circuit that does not always require the filing of a document equal to a federal well-pleaded complaint to commence an action.

A partial survey of other states reveals a similar result. Many states have largely adopted the federal rules of civil procedure, including the rules governing commencement of an action. *See, e.g.,* Cal.Civ.Proc.Code § 411.10 ("A civil action is commenced by filing a complaint with the court.") (West 1982); Tenn.R.Civ.P. 3 ("All civil actions are commenced by filing a complaint with the court."); Tex.R.Civ.P. 22 ("A

The shift in reference from *federal* to *state* complaint thus creeps in *sub silentio* but fallaciously.[4]

civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk."); *id.* 47 (petition is "a short statement of the cause of action sufficient to give fair notice of the claim involved"). However, some states have not adopted Fed.R.Civ.P. 3 to govern commencement of an action in state court. In New York, a civil action is not instituted by the filing of a complaint; it is commenced by the service, delivery, or filing of the summons. N.Y.Civ.Prac.L. & R. 304 ("An action is commenced and jurisdiction acquired by service of a summons."); *see Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *Potter v. Potter,* 104 Misc. 2d 930, 430 N.Y.S.2d 201 (1980). In New York, a "summons" is only a written notice required to bring a defendant into court; it is designed to apprise the defendant that the plaintiff seeks judgment against him and that at a stated time and place he is to appear and answer the complaint against him. *Hutchison v. Hutchison,* 87 Misc.2d 1071, 386 N.Y.S.2d 897, *aff'd,* 55 A.D.2d 817, 390 N.Y.S.2d 607 (1976). The complaint need not be served with the summons, but if it is not, the summons "shall contain or have attached thereto a notice stating the nature of the action and the relief sought." N.Y.Civ.Prac. L. & R. 305(b) (Cum.Supp.1988).

Pennsylvania also does not require the filing of a complaint to commence an action. *See* Pa.R.Civ.P. 1007 ("An action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, (2) a complaint, or (3) an agreement for an amicable action."). The first option has been explicitly held to require less than a "complaint." *See Gross v. United Engineers & Constructors, Inc.,* 302 A.2d 370, 224 Pa.Super. 233 (1973) (proper procedure for plaintiff to have followed in obtaining by discovery information necessary to preparation of an adequate complaint was to commence his action by filing a praecipe for a writ). As discussed *infra,* compliance with this state procedural rule was held by a federal district court to toll the statute of limitations in a case subsequently removed to federal court. *See Dravo Corp. v. White Consol. Industries,* 602 F.Supp. 1136 (W.D.Pa.1985).

The fact that the federal rules provide just one form for commencing an action (*i.e.,* filing a complaint) does not rule out other valid forms for commencing. *Cf.* 54 C.J.S., Limitations of Actions, § 261 ("The commencement of an action or suit to enforce a right before the statutes of limitations has run against it arrests and suspends the running of the statute...."); 51 Am.Jur.2d, Limitation of Actions, § 202 ("Commencement of the action interrupts the running of the statute of limitations as to all parties to the action and their privies...."). Here, there

## II.

The panel majority's result can only be reached without doing violence to federal procedural rules governing removal, and the principles behind the federal pleading rules, if the requirement that a complaint satisfying Fed.R.Civ.P. 3 must be filed in state court to toll the statute of limitations is a part of the *federal substantive labor law* governing hybrid actions. The key in this case is, to me, the same as that expressed by Judge Learned Hand in *Bomar v. Keyes,* 162 F.2d 136, 140–41 (2d Cir. 1947), *cert. denied,* 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947), *i.e.:* whether "the limitation [on the forms of pleadings and other procedures] is annexed as a condition to the very right of action created." I do not believe that federal *pleading* rules have been added to the *substantive* federal law governing hybrid actions.[5] Linguistically, it is difficult to regard a rule of federal *procedure* as *substantive* in effect.

The pleading requirements of Rule 3 have simply not been annexed by Congress or by the Supreme Court as a condition to hybrid suits. In discussing the decision to annex a six month statute of limitations, the Court stressed, "when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary." *West v. Conrail,* — U.S. —, 107 S.Ct. 1538, 1542, 95 L.Ed.2d 32 (1987). In *West,* the Supreme Court thus made it clear that in *DelCostello* it merely borrowed the six month limitations period from an analogous federal labor statute and did not borrow other substantive or procedural requirements, such as, in particular, the short service of process period also contained in that statute.

The Court stated in *West,* "[t]he *only* gap in federal law that we intended to fill in *DelCostello* was the appropriate limitations period. We did not intend to replace any part of the Federal Rules of Civil Procedure with any part of § 10(b) of the

---

is no question the plaintiff had an action which was commenced within six months of accrual by a pleading stating the action's nature and purpose.

The differences in some state procedures for commencing actions in state court do not undermine the six month limitation period established in *DelCostello,* and do not introduce undesirable nonuniformity in the enforcement of federal labor laws. Indeed, it is hard to see any deleterious practical effect from the application of the state procedural rules to hybrid cases brought in state courts. Under the North Carolina rules rejected by the majority, the defendants received notice of claims, their nature and their purpose several months earlier than they were entitled to under the federal procedural rules. Under the rules of other states, such as New York, the defendant receives notice even sooner. In New York, the summons must be served or delivered *within* the limitations period; the defendant may not know all the details of the allegations, but he will at least know the nature of the action and the relief sought before the limitations period expires. Under the federal rules, by contrast, the defendant might not know the action was pending until 120 days after the end of the limitations period.

**5.** The application of a federal rule while the case was still subject to and governed by state rules is difficult for me to fathom. The panel majority to my mind has simply forced the result. The result may have been thought to be the consequences of irresistible force. If so, I should like to bring to my colleagues' attention the immovable object.

It is established that while a case is in state court, state procedures govern even if the case involves a federal question:

Under some circumstances, lawsuits asserting federal rights may be brought in state court. In such cases, the state may apply its own commencement provision, *regardless of* whether the applicable statute of limitations derives from federal or state law. Since Rule 3's provision that filing effects commencement is simply a procedural rule of the federal courts, it should not be viewed as part of the substantive federal cause of action to be applied by the state court. See, *e.g., Sauerzopf v. North Am. Cement Corp.* (1950) 301 NY 158, 93 NE2d 617. This is, in essence, the obverse of the rule that federal courts need not apply state commencement provisions in diversity cases if those provisions are not an integral part of the state's substantive law. 2 Moore's Federal Practice ¶ 3.09[2] at p. 3–84 n. 15 (2d ed. 1987). The foregoing conclusion is buttressed by federal procedural rules governing removed actions. *See* Fed.R.Civ.P. 81(c); *see also Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253 (4th Cir.1987). The answer will not wash that picking and choosing of federal rules is limited to Fed.R.Civ.P. 3 and does not extend to Fed.R.Civ.P. 81(c). For at the very outset, in Fed.R.Civ.P. 1, it is unambiguously laid down that *"These rules* govern the procedure in the United States district courts in *all* suits of a civil nature...." (Emphasis supplied).

National Labor Relations Act." 107 S.Ct. at 1541 (emphasis added). *DelCostello* thus only establishes that an action must commence within six months of accrual. It does not address how the action is to be commenced or prosecuted, or how the statute of limitations may be tolled. *West* involved a hybrid action initiated and maintained exclusively in federal court; the Court's comments about applying federal procedural rules, such as Fed.R.Civ.P. 4(j) governing service of process, thus cannot be read to require imposition of federal procedural rules when a hybrid action is pending in *state* court. *See West*, 107 S.Ct. at 1541–42. We, therefore, must fall back on general principles, on how such procedural problems are normally solved. The principles that should govern the instant case are manifestly the familiar rules governing removal of cases to federal court.

### III.

Under federal rules and in the interest of comity, the federal court must show deference to the state court until a removal has occurred. It is clear that a federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court, even though the cause of action arises from federal law. *Herb v. Pitcairn*, 324 U.S. 117, 120, 65 S.Ct. 459, 460, 89 L.Ed. 789 (1945) ("[w]hether any case is pending in the Illinois courts is a question to be determined by Illinois law"). In a clarifying opinion in *Herb v. Pitcairn*, the Supreme Court held that the statute of limitations contained in the federal statute was satisfied by plaintiff's initial filing in a state court where the jurisdiction was exclusively federal:

Clearly, however, when process has been adequate to bring in the parties and to start the case on a course of judicial handling which may lead to final judgment *without issuance of new initial process*, it is enough to commence the action within the federal statute.

*Herb v. Pitcairn*, 325 U.S. 77, 79, 65 S.Ct. 954, 955, 89 L.Ed. 1483 (1945) (emphasis added).[6]

Rule 81(c) applies by its terms to all removed actions, including federal question cases. Fed.R.Civ.P. 81(c) ("[t]hese rules apply to civil actions removed to the United States district courts from the state courts"); *see* 28 U.S.C. § 1441(a) ("Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed."). Rule 81(c) also states, "These rules ... govern procedure *after* removal. Repleading is not necessary unless the court so orders." Fed.R.Civ.P. 81(c) (emphasis added). The federal rules governing pleadings thus are not applied after removal to disqualify or otherwise penalize litigants whose pleadings satisfied state requirements.[7] *See Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir. 1987) (under Fed.R.Civ.P. 81(c), federal rules, "including Rule 11, do not apply to the filing of pleadings or motions prior to removal").[8]

In *Dravo Corp. v. White Consol. Industries*, 602 F.Supp. 1136 (W.D.Pa.1985), the court reached the correct result in a situation similar to the one presented by the present case. The filing of a *praecipe* for writ of summons is one of three ways to commence an action in a Pennsylvania state court; under state rules, such filing

---

**6.** *See Burnett v. New York Central R.R.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (filing of suit in state court tolled federal statute of limitations despite subsequent dismissal for lack of venue so later filing in federal court not time barred).

**7.** That general principle is true whether the case is one over which the state court and the federal court have concurrent subject matter jurisdiction (as here) or whether the case is one "improperly" commenced in the state court when, for merits purposes the jurisdiction is exclusive-

ly federal. *Berry v. Pacific Sportfishing, Inc.*, 372 F.2d 213 (9th Cir.1967), *cert. denied*, 389 U.S. 821, 88 S.Ct. 42, 19 L.Ed.2d 72 (1967).

**8.** The Seventh Circuit has specifically held that Fed.R.Civ.P. 3 "is wholly irrelevant" in deciding whether a removed case was properly commenced in state court, because the Federal Rules of Civil Procedure govern procedure *after* removal. *See Riehl v. National Mutual Ins. Co.*, 374 F.2d 739, 742 (7th Cir.1967).

effectively tolls the statute of limitations. *Id.* at 1139. In *Dravo*, the court held:

Although FED.R.CIV.P. 3 provides that "[a] civil action is commenced by filing a complaint with the court", in the case *sub judice*, since it originated in Pennsylvania state court and was removed to federal court only after it had been "commenced", this Court finds that this action was "commenced" on April 27, 1979, the date the praecipe for writ of summons was filed in Pennsylvania state court, not in October, 1983, the date the complaint was filed there.

*Id.* at 1139. Similarly, in this case the plaintiff's filing of the charge in the state court and the court's issuance of a summons satisfied North Carolina's procedural rules governing the commencement of actions, and the federal court upon removal should regard the action as having been commenced by that first filing.[9] When the action was commenced, it was brought in state court and the steps of the plaintiff were adequate to accomplish and complete timely service before removal took place. Only upon removal, for the first time, did the Federal Rules of Civil Procedure come into play.[10]

Reference to *West v. Conrail* is particularly pertinent here because it emphasizes that in *DelCostello* the *only* thing borrowed from § 10(b) of the NLRA for hybrid actions was the limitations period; instead of borrowing a provision providing the service of process period, the general rules of procedure of the applicable court (in *West*, the federal district court where the action was initiated and maintained) were held to be pertinent. Here, the court whose procedural rules applied prior to removal is the North Carolina court. It seems to me clear from *West* that in going to § 10(b) of the NLRA for the six month limitation period the court meant not to borrow anything else and especially not to borrow the distinct provisions of Fed.R. Civ.P. 3 to govern actions while they were in state court and governed by state court rules. The procedural *rule* as to what it takes to commence an action is separate and distinct from what is the time period which shall govern for limitations purposes (often denominated the *statute* of limita-

---

**9.** There are examples of this rule in cases from other federal courts where an initial filing in state court that would not have satisfied the federal well-pleaded complaint rules nevertheless was held sufficient to maintain the action after removal to federal court. In *Instituto Per Lo Sviluppo Economico Dell'Italia Meridionale v. Sperti Products, Inc.*, 47 F.R.D. 310, 313 (S.D.N.Y.1969), the court refused to require the plaintiff to file a new complaint in a removed action that was commenced according to state procedure by the filing of a motion for summary judgment in lieu of a complaint. Similarly, in *Murphy v. E.I. Du Pont de Nemours & Co.*, 26 F.Supp. 999, 1000 (W.D.Pa.1939), the court held that a statement of claim filed in state court under a state statute making further pleadings unnecessary could properly stand as a complaint after removal to federal court; the defendant could move for a more definite statement under Fed.R.Civ.P. 12(e) once the case had been removed. Thus, as noted in *Murphy* and in other cases, the application of Rule 81(c) does not undermine other federal procedural rules, because the parties can seek amendment or clarification of pleadings as necessary once the case has been removed. In addition, *in order to qualify for removal,* "the federal question must be presented by plaintiff's complaint as it stands at the time the petition for removal is filed and the case seeks entry into the federal system." Wright, Miller & Cooper, Federal Practice and Procedure § 3722. Here the filing of the "complaint" in North Carolina on March 27, 1986 clearly preceded removal to the federal court.

**10.** *See Clark v. Wells,* 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138 (1906), where the Supreme Court held that a defendant in a case begun in state court could not defeat jurisdiction by removing to federal court and claiming that service of process failed to satisfy federal rules. The Court stated, "The defendant had a right to remove to the Federal court, but it is neither reasonable nor consonant with the Federal statute preserving the lien of the attachment, that the effect of such removal shall simply be to dismiss the action wherein the state court had acquired jurisdiction by the lawful seizure of the defendant's property within the State." *Id.* at 171–72, 27 S.Ct. at 45.

Indeed, one palpable defect in the panel majority's approach stands revealed when one considers the consequences had the instant case not been removed but been allowed to proceed in state court. In order to preserve "uniformity," in the panel majority's view of things, a North Carolina case fully complying with North Carolina requirements for commencement of the action within six months of accrual would have to be dismissed as not in compliance with Rule 3 of the *Federal* rules of civil procedure.

tions, because it is found in the substantive law giving rise to the action and not in the general procedural rules applicable in a particular court).

## IV.

The application of state procedural rules to hybrid actions brought in state courts does not in any way undermine the "uniformity" sought by the Supreme Court in *DelCostello*, even in a case such as this where the full-fledged complaint was not filed until twenty days after it would have been required were the action initially brought in federal court. The twin purposes of having a six month statute of limitations, prevention of stale claims and repose for the defendant, are not defeated by North Carolina's twenty day extension for the filing of a full complaint, particularly where the plaintiff was required to and did initiate her action within the six month limitation period by filing a pleading stating the nature and purpose of the action. The principles underlying a statute of limitations are cogently and succinctly expressed by Judge Widener in *Goad v. Celotex Corp.*, 831 F.2d 508, 510–11 (4th Cir. 1987):

> Statutes of limitation represent a public policy judgment by a State as to the time at which an action becomes too stale to proceed in its courts. States rightly

may be concerned about the prosecution of fraudulent claims and reliability of judgments rendered upon old claims, where memories may have faded, witnesses may have died, and evidence may have been lost. It has also been said that statutes of limitation also serve the interest of allowing defendants to rest assured that, after a certain period of time, their exposure to liability has ended. See, e.g., *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 118–19 (D.C. Cir.1982). It is felt, and we agree, that the principal purpose of limiting statutes is the prevention of stale claims, and that the repose of defendants is merely an incidental benefit of such statutes. See *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).

The requirement of prompt action by the plaintiff was satisfied here within the six month period by the filing in the North Carolina court on March 7, 1986 of a pleading stating the nature and purpose of the suit. The second goal to which Judge Widener has alluded, involving notice to the defendant, was more than fully met because service of the summons and complaint was required and achieved within seven months of accrual, while the federal rules would not require service until ten months following accrual.[11]

---

**11.** That analysis is fully consistent with the Supreme Court's discussion in *West* of the role played by the statute of limitations and service of process requirements in hybrid cases. The Court rejected the argument that a service period shorter than the 120 day period in Fed.R.Civ. P. 4(j) was necessary to assure prompt notice for defendants in hybrid suits:

> Respondents also argue that § 10(b)'s service requirement must be adopted in order to assure that defendants receive prompt notice of suit against them. The requirement of timely service in Rule 4(j) satisfies this need without recourse to the service requirement of § 10(b). While it is possible that a defendant will not be served with the complaint until ten months after the cause of action accrues, this result is not inconsistent with our adoption of a six-month statute of limitations for breach of contract/breach of duty of fair representation claims. See *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The administrative scheme for unfair labor practices only re-

quires that the *charge* be filed and served within six months of the date the cause of action accrued. The defendant does not receive the complaint, if any, until the General Counsel has investigated the charge and decided to proceed. Under both the administrative procedure for unfair labor practices and the judicial procedure for hybrid claims, the statute of limitations and the tolling provisions extinguish stale claims; they guarantee that the defendant is not subject to suit for conduct that occurred more than six months before the complaining party initiates appropriate legal process, by filing either a charge with the NLRB or a complaint in federal court.

*West*, 107 S.Ct. at 1542 n. 7 (emphasis in original). It is important to note that the Court did not address in *West* but surely did not exclude a third way "appropriate legal process" may be initiated, namely, by commencing the hybrid suit in *state* court. In *Vaca v. Sipes*, 386 U.S. 171, 176–88, 87 S.Ct. 903, 909–16, 17 L.Ed.2d 842

Leaving labels aside, essentially what has happened is that in North Carolina some of what is traditionally (and is at present in federal district court) considered part of a complaint is instead required to be pleaded in order to obtain the summons.[12] We should not allow nomenclature to deceive us, but rather should address the basic underlying principles. The summons in North Carolina, because of its requirement that the nature and purpose be stated, has become in all respects pertinent here as a quasi-complaint. The Federal Rules of Civil Procedure, after all, require only a short and plain statement.[13]

Reference to the pleading filed here under North Carolina law as a quasi-complaint reveals an additional reason for holding that commencement of the action here was timely. Even if Fed.R.Civ.P. 3 is to be deemed applicable (a supposition which I

make only for the sake of argument), Fed. R.Civ.P. 15 must also apply. Thus, even if the document is only a quasi-complaint, or a defective complaint, it could be amended. Under Rule 15(a), a party may amend a pleading once as a matter of course at any time before a responsive pleading is served, or at any time within twenty days after it is served. Here the plaintiff's filing of the full complaint on March 27, 1986 amounted to an amendment to the March 7 pleading which had set out the action's nature and purpose. It was filed in court long before a responsive pleading was due. Under Rule 15(c), relation back to the date upon which the pleading requesting the North Carolina summons—the defective complaint—was filed is called for and makes the effective date for measuring the full complaint March 7, 1986 rather than March 27, 1986.[14] The complaint, therefore, was

(1967), the Supreme Court held that state courts have jurisdiction over hybrid suits.

**12.** North Carolina's Rule 3, governing commencement of civil actions, has been liberalized to permit a plaintiff to commence an action by filing a complaint. The previous state practice required the issuance of a summons by a state court to commence an action. In revising its procedural rules, North Carolina adopted a "notice pleading" theory, emulating the "liberality [that] is the canon of construction of the federal rules." *Morris v. Dickson,* 14 N.C.App. 122, 124, 187 S.E.2d 409, 410 (1972). *Accord Wolman v. Tose,* 467 F.2d 29, 33 (4th Cir.1972) (noting liberality of federal rules of civil procedure). The court in *Morris* held the statute of limitations was satisfied where the plaintiff's actions were in "substantial compliance" with Rule 3, as the defendant could not show that he was taken by surprise. 187 S.E.2d at 411.

Interestingly, the official comment to N.C.R. Civ.P. 3 notes that the most important reason for adding the provision allowing commencement by complaint alone was to protect the unwary plaintiff who filed a proper federal complaint in federal court in a diversity action but failed to post a required bond, thus delaying the issuance of a summons beyond the limitations period, and subsequently had his case dismissed because the federal court would not give a diversity claim a longer life than it would have in state court. *See* Comment, N.C.R.Civ.P. 3 (1983) (citing *Rios v. Drennan,* 209 F.Supp. 927 (E.D.N.C.1962)).

**13.** Fed.R.Civ.P. 8(a). "No technical forms of pleading are required." *Id.* 8(e)(1). "All pleadings shall be so construed as to do substantial justice." *Id.* 8(f). "Rule 15 reflects the fact that

the federal rules assign the pleadings the limited role of providing the parties with notice of the nature of the pleader's claim or defense and the transaction, event or occurrence that has been called into question; they *no longer carry the burden of fact revelation and issue formulation,* which is now discharged by the discovery process, or control the trial phase of the action." 6 Wright & Miller, *Federal Practice and Procedure* § 1471 at 360 (1971). "The federal rules seek to promote simplicity in procedure, the just determination of litigation and the elimination of unjustifiable expense and delay." Announcement of the Chief Justice of the United States of April 4, 1960, *reprinted in* Federal Civil Judicial Procedure and Rules at vii (West 1987).

**14.** *See* Fed.R.Civ.P. 15(c). The liberal doctrine of relation-back is well established in the federal rules:

Rule 15(c) is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been *instituted,* the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1496 (Supp.1987) (emphasis added). An amendment will relate back under Rule 15(c) even if it arose out of the conduct, transaction or occurrence that merely "was *attempted* to be set forth in the original pleading." *Id.* § 1497 (1971) (emphasis added). *See, e.g., United States v. Posner,* 405 F.Supp. 934, 937 (D.Md.1975) (amendments to conform to proof, stating cause of action more accurately, relate

effective even for purposes of federal procedure, including Fed.R.Civ.P. 3, within six months of the accrual of the action.

## CONCLUSION

The Supreme Court has indeed expressed the need for national uniformity in the operation of labor law and the bringing of "hybrid" suits, but we must be careful not to sacrifice too much on the altar of supposed uniformity. The need for uniformity in setting limitation periods that led the Supreme Court to borrow the six month period for "hybrid" cases does *not* imply a need to achieve completely identical procedures for the handling of hybrid cases in state and federal courts. Where Congress was silent, it would be improper for this court to require such identical procedural forms by imposing federal pleading requirements on state courts, so long as state courts have concurrent jurisdiction over such suits.[15] *DelCostello* does not require the result of the panel majority in the instant case. The action here was commenced within six months. *West*, by explicitly narrowing the holding in *DelCostello*, counsels *against* reading additional procedural requirements into the underlying substantive law.

The case appears to me to be one of great importance because of the precedent it would set for cases correctly filed according to state procedures and later removed to federal court. It is also important in a narrower, but still significant, sense because many employees seeking to bring hybrid actions under § 301 could be affected. If they wished to bring a suit in state court, where there is concurrent jurisdiction, they would somehow have to navigate the shoals of state and federal procedures, attempting to comply with *both* sets of rules in case the defendant chose to remove the case to federal court.[16]

Because federal substantive labor law does not require the panel majority's result, we should follow the wellworn path that holds state procedural rules, such as those governing commencement of actions, applicable in a removal case unless and until removal to federal court is accomplished. Here, the North Carolina Rules of Civil Procedure, which permit commencement of an action by the timely filing of a pleading disclosing the nature and purpose of the action followed by the timely issuance of a summons and by filing of a full complaint within twenty days, should be honored to permit the continuation of the action in federal court.

Even if (for the sake of argument) we must apply the federal procedural rules before removal of the case to federal court, the result in the instant case is the same: there was a timely filing commencing the action on March 7, 1986, within six months of accrual, followed up by an amended complaint relating back to the original filing under Rule 15.

In sum, this action was properly commenced in state court pursuant to state rules within the six month limitation period; once commenced, the case could be removed by the defendants to federal court because of the presence of a federal question; and once properly removed, the case should be adjudicated by the federal court, with federal procedural rules applied only *after* removal pursuant to Fed.R.Civ.P. 81(c). If the plaintiff's case fails on substantive grounds, the proper way to ascertain that is by Rule 12(b) motion, a summary judgment motion, or by asserting the defect at trial. I would require the district court to deny the motion to dismiss on limitations grounds and allow the case to proceed.

---

back under Rule 15(c) because plaintiff attempted to set forth same claim in original pleading).

**15.** Applying the North Carolina rules will afford proper respect to the principle of dual federalism, a principle contributing to the greatness of our federal Constitution as its two hundredth birthday rolls around.

**16.** As noted above, North Carolina only recently revised its rules to permit commencement of an action by filing a complaint. If the state rules did not permit commencement in that way, a plaintiff wishing to file a hybrid action in state court (as permitted by *Vaca v. Sipes*) would truly be caught in a Catch–22 situation under the panel majority's decision.

In conclusion, permit me to say that in deciding a case and preparing an opinion one judicial responsibility is to consider the consequences, and especially adverse consequences, of any rule adopted. In addition to examining the rule, the court must consider whether to apply the new rule retroactively to the parties involved in the case before it. Under the factors enumerated by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1972), I believe that the panel majority's new filing rule (assuming that it must be adopted at all) should not be applied retroactively to bar the plaintiff's suit in the present case.

*Chevron* sets forth three factors for a court to consider in determining whether to make a new rule nonretroactive.[17] The first factor is that "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression, whose resolution was not clearly foreshadowed." 404 U.S. at 106, 92 S.Ct. at 355 (citations omitted). When the plaintiff here asked her attorney to institute suit, he knew that, because of the holding of *DelCostello,* he must do so within six months. He did so. He also knew that he might file suit in federal court or state court. He chose the latter; he was fully justified in that choice by the Supreme Court's opinion in *Vaca v. Sipes,* which the panel majority has not attempted to overrule or distinguish. (If it were to do so, we would encounter serious difficulty in the resulting denial of state court jurisdiction arising from the use of Fed.R.Civ.P. 3 to accomplish that end because the federal rule would then have been used to diminish jurisdiction, a result prohibited by Fed.R. Civ.P. 82.) The method chosen by Can-

non's attorney for proceeding, for the reasons I have already adverted to, follows the generally accepted rule that, while in state court, one should adhere to state rules of procedure. One is ordinarily expected to comply with federal rules of civil procedure only when the case is in federal court. State court procedure required a statement of the nature and purpose of the suit within the six month limitation period, the issuance of a summons and the timely filing of a full complaint. Cannon complied with all aspects of the state court procedure. The rationale of the panel majority's decision consequently marks a dramatic departure from law as it has heretofore existed, and I do not think the majority's result was clearly foreshadowed (or, indeed, permitted) by *DelCostello* or *West.* Indeed, *West* points, if at all, in the other direction, as the Court there stressed the narrowness of its decision in *DelCostello* [18] and refused to impose a special service of process requirement on plaintiffs bringing hybrid suits.

The second *Chevron* factor requires a court to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 404 U.S. at 106–07, 92 S.Ct. at 355. While the panel majority here seeks "uniformity," I do not see how retrospective application of a filing rule to Dorothy Cannon will further that goal, and I do not see how nonretroactivity would impede it. The plaintiff here complied with a state court requirement of service within seven months of accrual. Applying federal rules allows service within ten months of accrual. Since service will generally be the first notice to defendants of a case's existence, I see no impediment whatever in the furthering of the goal.

---

**17.** We have indicated in the past that each of the three factors must be satisfied in order for non-retroactivity to apply. *See Zemonick v. Consolidation Coal Co.,* 762 F.2d 381, 397 n. 14 (4th Cir.1985) (Ervin, J., dissenting), *rev'd,* 796 F.2d 1546 (4th Cir.1986) (en banc) (per curiam) (citing dissenting panel opinion with approval), *cert. denied,* —— U.S. ——, 107 S.Ct. 671, 93 L.Ed.2d 723 (1986). It may be, however, that a careful balancing of the three factors is the

proper approach rather than a strict unanimous factor-by-factor tally. *See Cash v. Califano,* 621 F.2d 626, 629 (4th Cir.1980). In any event, because I find all three factors met here, I would apply *Chevron* and make the majority's new rule nonretroactive in the present case.

**18.** Emphasizing that *only* the six month limitation period was borrowed.

The third *Chevron* factor, weighing the inequity imposed by retroactive application, is clearly met in this case. We would do well to remember that in *Chevron* the Supreme Court held that the restrictive statute of limitations found to be applicable would not be applied retroactively to bar the plaintiff: "retroactive application of the Louisiana statute of limitations to this case would deprive the respondent of any remedy whatsoever on the basis of superseding legal doctrine that was quite unforeseeable." *Id.* at 108, 92 S.Ct. at 356. The plaintiff here did all that she could be expected to do, approaching a lawyer within the six month limitation period. Her lawyer acted reasonably in view of the law extant at the time the suit was filed. Yet, if the panel majority's new filing rule for hybrid suits is applied retroactively, Dorothy Cannon is to be told that for her, although she was prompt, the courts simply afford no relief whatever, throwing out her case on untimeliness grounds.[19] The whole concept of courts and their raison d'etre are thereby seriously and adversely affected. The consequence of retroactive application seems particularly unmerited when one considers the position of the only other parties on the scene, the defendants. Under North Carolina law, the full and complete complaint had to be served on the defendants within seven months of the accrual of the action. Under federal law, by contrast, the plaintiff had, as to each defendant, ten months in which to achieve service. Since service is what brings the matter to the defendants' attention, the defendants have in no way been harmed by allowing the plaintiff and her lawyer to follow the generally accepted rule that in state court one shall do as state litigants are expected to do.

An analysis of this case under *Chevron* thus clearly demonstrates even more clearly why the panel majority have, while hoping to reach greater uniformity, not only failed to do so, but have wandered into an area where they cause substantial harm by

creating an entirely new rule and by applying it retroactively to the instant case.

I therefore dissent from the denial of rehearing *en banc*.

Judge Widener and Judge Phillips join in this dissent. Judge Widener joins because he believes that the reasoning of the Supreme Court in *Herb v. Pitcairn*, 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1945), and *Herb v. Pitcairn*, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483 (1945), controls this case. Judge Phillips agrees with the substance of the opinion. He believes that the implication of the panel decision for all removed cases is sufficiently serious and arguably wrong for many of the reasons developed in the opinion that *en banc* reconsideration is warranted.

---

**19.** I find it hard to believe that anyone would contend the lawyer's action constituted malprac-tice.