**Ethel M. DAVISON and David Davison**

v.

**SINAI HOSPITAL OF BALTIMORE, INC., and Lionel Glassman, M.D., and Lionel Glassman & Associates, P.A., and Zoena A. Yannakakis, M.D.**

**Civ. No. HM78–841.**

United States District Court,
D. Maryland.

Dec. 14, 1978.

Marvin Ellin, and Jonathan Schochor, Baltimore, Md., for plaintiffs.

E. Dale Adkins, III, and Angus R. Everton, Baltimore, Md., for defendants.

HERBERT F. MURRAY, District Judge.

Defendants Lionel Glassman, M.D., Lionel Glassman & Associates, and Zoena A. Yannakakis, M.D., have moved this court for dismissal of the instant action pursuant to Rule 12 of the Federal Rules of Civil Procedure. Defendants contend that this court has no subject matter jurisdiction over the claim and that the claim does not state a cause of action upon which a United States District Court situated in Maryland may grant relief.

Defendants have been sued for damages for alleged medical malpractice. The jurisdiction of this court is founded upon diversity of citizenship of parties. Defendants contend that until such time as plaintiffs have complied with the arbitration provisions of the Maryland Health Care Malpractice Claims Act[1] they can state no Maryland cause of action and hence this court has no jurisdiction. As far as this court can determine, this motion presents a question of first impression under the Maryland statute.

In 1976 the Maryland General Assembly responded to the "medical malpractice crisis" by passing the above-cited act. Principally, that act requires that claims against doctors and other "health care providers" involving amounts greater than $5,000 be submitted to an arbitration panel before suit may be brought in Maryland courts. The arbitration panel, comprised of an attorney, a "health care provider" and a third person from neither profession, makes findings with regard to liability and, where appropriate, damages. Either party may challenge the findings of the panel in a trial *de novo* by jury. The findings of the panel, however, are presumptively valid and admissible into evidence at trial.

Plaintiffs in the instant action have not submitted this matter to the arbitration panel, although that would clearly be required if plaintiffs were proceeding in the state courts. The Malpractice Claims Act provides at Section 3–2A02 of Subtitle 2A, that claims such as the instant one must be arbitrated and that:

An action or suit [against a health care provider for medical injury in which damages of more than $5,000 are sought] may not be brought or pursued in any court of this State except in accordance with this subtitle.

Plaintiffs concede that the statute requires arbitration as a prerequisite to suits in Maryland state courts but argue that by its clear terms the statute excludes federal courts from its coverage. They note that Section 3–2A01(c) of the subtitle defines "court" as "a circuit court of a county or court of the Supreme Bench of Baltimore City having jurisdiction over actions at law." They note, also, that Section 3–2A02 refers to "any court of this State."

The court does not believe that Sections 3–2A01 and 3–2A02 of the subtitle were intended to except federal courts exercising diversity jurisdiction from the provisions of the act. A careful study of the legislative history of the act reveals no discussion of the role of federal courts in deciding Maryland health care malpractice cases. It appears that this was not a consideration of the legislature in drafting this legislation. The legislature apparently was concerned, however, that small claims not be subject to arbitration provisions as a prerequisite to suit in court. Thus, it appears that the limiting definition of "court" was to insure that suits involving claims of less than $5,000 could be filed in state district courts without requiring the parties to go through expensive arbitration proceedings.

Given, therefore, that the statute itself does not preclude its application in federal courts, should this court require plaintiffs in this suit to arbitrate the action prior to bringing suit in this court? The court is of the opinion that the Supreme Court's decision in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its decisions in subsequent cases require precisely that.

Under *Erie,* a federal court, acting under its diversity jurisdiction, must apply

1. Title 3, Subtitle 2A, Courts and Judicial Proceedings Article of the Maryland Code.

the substantive law of the state where the cause of action arose. There is no dispute in this case that the controlling substantive law is that of Maryland. Plaintiffs argue, however, that for *Erie* purposes, the arbitration provisions are "procedural" rather than "substantive." This court is persuaded otherwise.

The question of whether particular law is "substantive" or "procedural" for purposes of applying *Erie* is not an easy one. The Supreme Court has developed the distinctions painstakingly in a number of post-*Erie* decisions. In *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) and *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the court developed the "outcome determinative" test. Under that test, where a law would determine the outcome of litigation, it was held to be substantive. Under this rule, questions of limitations and other seemingly procedural matters were held to be governed by state law. The Supreme Court subsequently held, however, that "outcome determination" was not always, in itself dispositive. The Court in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), held that courts must look to the policy considerations underlying its decision in *Erie* and not mechanically apply the outcome test. The Court specifically noted two such considerations:

"The *Erie* rule is rooted in part in a realization that it would be unfair for the *character* or result of a litigation materially to differ because the suit had been brought in a federal court.

. . . [t]he decision was also in part a reaction to the practice of 'forum-shopping' which had grown up in response to the rule of *Swift v. Tyson* [16 Pet. 1, 10 L.Ed. 865]." (emphasis added) *Hanna*, supra at p. 467, 85 S.Ct. at p. 1141.

When these two considerations are applied to this case, the court must conclude that the statute before the court is "substantive" for *Erie* purposes.

It is clear that the character of litigation would differ drastically if plaintiffs in Maryland state courts were required to submit their claims to an arbitration panel prior to bringing suit and plaintiffs in this court were not. Such a difference may or may not ultimately affect the result or outcome of the litigation. It certainly does, however, change the nature of the initial stages of the litigation and ultimately of the trial, given that the findings of the panel are admissible in a trial *de novo.*

Similarly, the forum-shopping objection noted in *Hanna* has relevance to this case in that plaintiffs who wished to avoid going through a preliminary arbitration proceeding might well be tempted to try to manufacture diversity of citizenship of parties in order to get into federal court.

Plaintiffs argue that the statute by its very terms was intended to be procedural. Specifically, they note that Subtitle 2A, section 3–2A09 provides:

The provisions of this subtitle shall be deemed procedural in nature and shall not be construed to create, enlarge, or diminish any cause of action not heretofore existing, except the defense of failure to comply with the procedures required under this subtitle.

The court does not believe that this statutory provision was intended to apply to the instant question but was merely intended to indicate that the legislature was not attempting to create a new cause of action in passing this statute.

The parties have cited the court to several United States District Court decisions in other districts interpreting similar state statutes requiring parties to arbitrate malpractice claims. The court notes that three of the four courts that have considered this question have held that the *Erie* line of cases requires the result reached by this court. *Wells v. McCarthy*, 432 F.Supp. 688 (E.D.Mo.1977); *Marquez v. Hahnemann Medical College and Hospital*, 435 F.Supp. 972 (E.D.Pa.1976); *Flotemersch v. Bedford County General Hospital*, 69 F.R.D. 556 (E.D.Tenn.1975). The only court that did not so hold said, *in dicta,* that it might have reached the same result as in *Flotemersch* had it not been considering a statute where

the arbitration panel was "an adjunct of the state court rather than as an independent agency." *Wheeler v. Shoemaker,* 78 F.R.D. 218, 221 (D.R.I.1978). The Rhode Island court refused to apply the statute under consideration because its application could deny federal courts initial jurisdiction while granting it to state courts.

Finally, the court turns to plaintiffs' constitutional argument. Plaintiffs contend that the Malpractice Claims Act deprives claimants of the right to a jury trial guaranteed in civil suits by the Seventh Amendment. They argue that trial *de novo* where the findings of the arbitrators are presumptively valid does not fulfill the Seventh Amendment guarantee.

This same objection to the statute was raised on Maryland state constitutional grounds in the case of *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57 (1978). The Maryland Court of Appeals, interpreting a constitutional provision similar to the Seventh Amendment, relied on several United States Supreme Court decisions in finding this challenge without merit. That court stated at 385 A.2d 69:

> That the legislature may . . . pass rules affecting the burden of proof without infringing the right to jury trial is not to be doubted, as is evident from both our own case law and decisions of the Supreme Court of the United States.
>
> .  .  .  .  .
>
> [I]n *Meeker v. Lehigh Valley R. Co.,* 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915), the Supreme Court concluded that a statutory provision making the 'findings and order of the [Interstate Commerce] Commission . . . prima facie evidence of the facts therein stated' in a subsequent civil suit to enforce payment as directed in the Commission's order did not infringe the right of trial by jury. The Court said:
>
>> This provision only establishes a rebuttal presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a

rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it in anywise work a denial of due process of law. . . .

*See also, In re Peterson,* 253 U.S. 300, 309–311, 40 S.Ct. 543, 64 L.Ed. 919 (1920). This court is persuaded by the reasoning of the Maryland court and by the Supreme Court authority cited in its decision. Accordingly, the court must hold that the act does not work a deprivation of plaintiff's Seventh Amendment right to trial by jury.

For all of these reasons, the court will enter an order dismissing the complaint without prejudice to a subsequent action after compliance with the terms of the Maryland Health Care Malpractice Claims Act.