852 F.2d 108
 57 USLW 2114
 Janet L. ROWLAND; Donald E. Rowland, Plaintiffs-Appellants,
v.
Donald A. PATTERSON, M.D.; Tom J. Altizer, M.D.; Michael
A. Winslow, M.D.; Robert K. Hobbs, M.D., Robert
J. Cirincione, M.D., Defendants-Appellees.
 No. 87-1721.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 10, 1988.
Decided July 18, 1988.
Rehearing Denied Sept. 6, 1988.
 
 La Vonna L. Vice (Marvin Ellin, Ellin & Baker, Baltimore, Md., on brief), for plaintiffs-appellants.
 Kathleen Howard Meredith (Laura C. McWeeney, Semmes, Bowen & Semmes, Baltimore, Md., Conrad W. Varner, Strite, Schildt & Varner, Hagerstown, Md., on brief), for defendants-appellees.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.
 MURNAGHAN, Circuit Judge:
 
 
 1
 On July 16, 1985, Janet L. Rowland and Donald Rowland filed with the Maryland Health Claims Arbitration Office (HCAO) a malpractice proceeding against five defendants who are medical doctors. The step was taken in accordance with the Maryland Health Care Malpractice Claims subtitle of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland. Md.Cts. & Jud.Proc.Code Ann. Secs. 3-2A-01 to -09. That subtitle establishes as a pre-condition to legal action in court the institution of a medical malpractice proceeding. Md.Cts. & Jud.Proc.Code Ann. Sec. 3-2A-02; Davison v. Sinai Hosp. of Baltimore, 462 F.Supp. 778 (D.Md.1978), aff'd, 617 F.2d 361 (4th Cir.1980); see Ott v. Kaiser-Georgetown Community Health Plan, Inc., 309 Md. 641, 646, 526 A.2d 46, 49 (1987).
 
 
 2
 Thereafter, following a summary judgment on May 6, 1987 by the HCAO for the defendants on the grounds that limitations had expired, plaintiffs filed a notice of rejection with the HCAO on June 12, 1987. Three days later, plaintiffs, alleging diversity jurisdiction, filed in the United States District Court for the District of Maryland a civil action to nullify the HCAO decision in favor of the defendants.[1]
 
 
 3
 Judicial review under a standard akin to de novo review of the HCAO decision was called for. Md.Cts. & Jud.Proc.Code Ann. Sec. 3-2A-06. Review is not precisely de novo since the HCAO decision has continuing vitality. The court on preliminary motion may modify, correct or vacate the award if it was procured by fraud or misconduct, occasioned by prejudice, or if the HCAO had exceeded its authority or committed a mistake of law or fact appearing on the face of the award. Md.Cts. & Jud.Proc.Code Ann. Secs. 3-2A-06(c), 3-223, 3-224. Otherwise, the award is admissible in any subsequent judicial proceeding and is presumed correct. Section 3-2A-06(d). Not only does the HCAO award have continuing vitality, but so do constituent elements of the proceeding. For example, when Donald Rowland's deposition in the HCAO proceeding was taken on December 15, 1986, it became admissible in the subsequent judicial proceeding. Section 3-2A-06(e).
 
 
 4
 On June 15, 1987 when the complaint was filed with the clerk of the Maryland federal district court, the plaintiffs and the defendants were diverse.[2] However, they were admittedly not diverse on July 16, 1985 when the HCAO proceeding first was filed.
 
 
 5
 The question of controlling importance, of course, is which of those two filings: the HCAO filing or the filing of the complaint in federal court commenced the action for purposes of determining the existence of diversity jurisdiction. It is well settled that diversity is judged as of the time of commencement of suit. Mollan v. Torrance, 22 U.S. (9 Wheat.) 537, 6 L.Ed. 154 (1824); Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); Mullins v. Beatrice Pocahontas Co., 489 F.2d 260 (4th Cir.1974). We must decide which filing commenced the suit. The district court ruled that the HCAO filing commenced it, found that on the date of commencement the parties were not diverse, and therefore dismissed the case for want of subject matter jurisdiction.
 
 
 6
 The district judge proceeded from the view that an action must commence for all purposes on a single date. He first found that the HCAO filing commenced the action for limitations purposes. He then stated that, because of a current disinclination to expand diversity jurisdiction, he should not hold that there was commencement of the action on two different occasions, once when the HCAO action was initiated on July 16, 1985, for limitation purposes, and again when the federal district court suit was filed on June 15, 1987 for purposes of determination of diversity.
 
 
 7
 There may be some doubts as to the correctness of the district court's logic. An action can commence on more than one date because of the holding in Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Federal courts sitting in diversity generally apply state statutes of limitations. Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). Thus, a federal action may commence for limitations purposes upon whatever event the state has defined for that purpose, e.g., the date of service of the complaint. Yet for all other purposes the federal action will commence under the applicable Federal Rule of Civil Procedure, Rule 3, that states that an action commences when the complaint is filed. However much it linguistically offends one's first impression, in legal principle, there could indeed be two different times of commencement.
 
 
 8
 However, even if the reasoning employed by the district court should prove to be slightly faulty, he was on the right track and the result remains the same. We agree with the conclusion that the present action commenced for purposes of determining diversity when the HCAO proceeding was filed. Federal courts apply federal rules of procedure, both those promulgated in the Federal Rules of Civil Procedure as well as wholly judge made procedural rules, unless the Erie doctrine commands otherwise. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 693 (1974). The present case requires us to decide which of two filings commenced an action in federal court for purposes of determining the existence of diversity jurisdiction. That is a purely federal procedural question, since no state substantive right is involved. Hanna, 380 U.S. at 471, 85 S.Ct. at 1143; 28 U.S.C. Sec. 2072.
 
 
 9
 Looking at the situation solely from a federal point of view, what occurred on July 16, 1985, the bringing of the HCAO action, happened to amount for federal purposes to a commencement of the cause of action.[3] Two reasons lead us to that conclusion. One, the HCAO proceeding continued to have effect when and after the case took on a completely judicial aspect. Two, submission to the HCAO is a condition precedent to filing suit in federal court as well as to state court filing. The HCAO filing then is the first filing necessary to institute a federal civil action. We hold that the HCAO filing commenced the suit for purposes of determining diversity jurisdiction. At the time of filing the HCAO proceeding on July 16, 1985, there was no diversity.
 
 
 10
 Consequently, dismissal was, therefore, appropriate.
 
 
 11
 AFFIRMED.
 
 McMILLAN, District Judge, dissenting:
 
 12
 The majority would hold that, for purposes of deciding diversity of citizenship of the parties, this action was "commenced" by the filing of a claim with a Maryland state administrative agency, rather than by "filing a complaint with the [federal] court," as required by Rule 3 of the Federal Rules of Civil Procedure.
 
 
 13
 I respectfully dissent.
 
 
 14
 This suit is a medical malpractice action by plaintiffs Janet Rowland and Donald Rowland against five medical doctors. Under Maryland statute, the Rowlands were required to file a claim with the Maryland Health Care Claims Arbitration Office as a precondition to filing a suit in either state or federal court. Md.Cts. & Jud.Proc.Code Ann. Sec. 3-2A-02; Davison v. Sinai Hospital of Baltimore, 462 F.Supp. 778, 780 (D.Md.1978), aff'd, 617 F.2d 361 (4th Cir.1980). The Health Care Claims Arbitration Office ("HCAO") is an administrative agency of the State of Maryland. It is not a state or federal court.
 
 
 15
 The Rowlands filed their claim with the Maryland HCAO on July 16, 1985. At the time they filed their claim, both the Rowlands and the defendants were residents of Maryland.
 
 
 16
 On May 6, 1987, the HCAO granted defendants' motion for summary judgment on the ground that the claim was untimely under the three-year statute of limitations applicable to medical malpractice claims against health care providers in Maryland. Md.Cts. & Jud.Proc.Code Ann. Sec. 5-109.
 
 
 17
 On June 15, 1987, plaintiffs initiated this suit by filing their complaint in the United States District Court for the District of Maryland. Plaintiffs allege that they were residents of West Virginia at the time they filed their complaint in federal court. Although defendants dispute the fact of plaintiffs' West Virginia residence on June 15, 1987, the court below assumed it. We likewise assume that, for the purpose of deciding this appeal, the parties were of diverse citizenship on June 15, 1987.
 
 
 18
 The district court dismissed the suit on the basis that the suit commenced for diversity purposes on July 16, 1985, the date the claim was filed with the Maryland state agency (HCAO), rather than on June 15, 1987, the date plaintiffs filed their complaint in United States District Court. The district judge observed that the filing of the HCAO claim tolled the state statute of limitations. He dismissed the case because he concluded that there should not be two dates for commencement of suit, and because he was concerned not to "expand" diversity jurisdiction.
 
 
 19
 As the majority observes, this reasoning is not supported by the law. Federal courts sitting in diversity jurisdiction are bound to apply state law in determining what event tolls a state statute of limitations, notwithstanding the language of Fed.R.Civ.Proc.Rule 3. ("An action is commenced by filing a complaint with the court.") Walker v. Armco Steel Corporation, 446 U.S. 740, 751-752, 100 S.Ct. 1978, 1985-1986, 64 L.Ed.2d 659 (1980); See, also, Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). Where a state recognizes an event different from the filing of the complaint in the court as commencing the suit for the purpose of tolling a state statute of limitation, Rule 3 still governs the definition of "commencement of suit" for other purposes, such as time deadlines for responsive pleadings. Walker, 446 U.S. at 751-752, 100 S.Ct. at 1985-1986.
 
 
 20
 The majority also recognizes that the question when an action commences for the purpose of determining diversity is a matter of federal law. See, Ziady v. Curley, 396 F.2d 873, 874 (4th Cir.1968); See, also, Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir.1983) (following Ziady ). However, the majority reaches a result that is unsupported by federal law.
 
 
 21
 The circuit courts that have addressed the issue unanimously hold that, except in cases removed from state court, diversity of citizenship is determined with reference to the date on which a complaint is filed in federal court. Topp v. CompAir Inc., 814 F.2d 830, 832, n. 1 (1st Cir.1987) ("Citizenship, for purposes of establishing diversity jurisdiction, is determined as of the date of initiation of suit ... [citations omitted] ... Here, since suit was filed on August 30, 1985, the citizenship of CompAir Inc. will be determined as of that date."); Lugo-Vina v. Pueblo International, Inc., 574 F.2d 41, 42, n. 1 (1st Cir.1978) ("[Diversity] [j]urisdiction is to be determined as of the time of the filing of the complaint.") Wigand v. Flo-Tek, Inc., 609 F.2d 1028, 1032 (2nd Cir.1979) ("[Diversity] jurisdiction is to be determined as of the commencement of suit. ... When the complaint in this case was filed on September 19, 1972, the offices and operations of Flo-Tek had been located in Hopewell Junction, N.Y. for approximately a year [footnote omitted]."); Nationwide Mutual Fire Insurance Co. v. T & D Cottage Auto Parts and Service Inc., 705 F.2d 685, 688 (3rd Cir.1983) ("... diversity jurisdiction is generally determined by the facts that existed at the time the complaint was filed."); Mullins v. Beatrice Pocahontas Co., 489 F.2d 260, 261 (4th Cir.1974) ("Plaintiff's complaint was filed on February 14, 1968, and that, of course, is the crucial date for determination of defendant's citizenship."); Seafoam, Inc. v. Barrier Systems, Inc., 830 F.2d 62, 66 (5th Cir.1987) ("It is well established law that the jurisdiction of a federal court sitting in diversity is determined as of the time of the filing of the complaint."); Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc., 768 F.2d 189, 190 (7th Cir.1985) ("... we direct the district judge to make and certify to us, within thirty days, his finding on the defendant's principal place of business as of the date the complaint was filed, which is the relevant date for purposes of establishing federal [diversity] jurisdiction."); Co-Efficient Energy Systems v. CSL Industries, Inc., 812 F.2d 556, 557 (9th Cir.1987) ("Diversity of citizenship is determined as of the time of the filing of the complaint."); Mann v. City of Tucson, Department of Police, 782 F.2d 790, 794 (9th Cir.1986) ("Existence of diversity jurisdiction is determined by the citizenship of the parties as the time of the filing of the complaint, not at the time the cause of action arose or after the action is commenced."); Scoggins v. Pollock, 727 F.2d 1025, 1028 (11th Cir.1984) (Court determined diversity of citizenship by determining the facts as of the date the plaintiff filed the suit); Prakash v. American University, 727 F.2d 1174, 1179, n. 28 (D.C.Cir.1984) ("Diversity of citizenship must exist when the action is brought--here 1978--and not when the cause of action arose."); Beghin-Say International v. Ole-Bendt Rasmussen, 733 F.2d 1568, 1572 (Fed.Cir.1984) ("That determination [whether the parties had diversity of citizenship] must be made as of the filing date of a complaint, or of an amended complaint, and cannot be changed by action of a party thereafter.").
 
 
 22
 Those courts use the date the complaint is filed as the date of commencement of suit because they are bound to do so by Federal Rules of Civil Procedure Rule 3. Rule 3 states: "A civil action is commenced by filing a complaint with the court." (Emphasis added.) The Advisory Committee's note to Rule 3 states, "... 2. This rule governs the commencement of all actions, ..."
 
 
 23
 Rule 3 has the force and effect of a federal statute. Courts have adopted a narrowing construction of the Federal Rules of Civil Procedure only where that construction serves the goals of the Erie doctrine, (preserving the integrity of state substantive law in diversity cases), or where an application of a rule would exceed the limits imposed by the Constitution or the Rules Enabling Act, 28 U.S.C. Sec. 2072. See, Walker, 446 U.S. at 751-752, 100 S.Ct. at 1985-1986. The application of the federal rules by a court sitting in diversity jurisdiction is not a matter of discretion.
 
 
 24
 When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions [footnote omitted]."
 
 
 25
 Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) (Emphasis added.).
 
 
 26
 Here, as noted above, there is no issue of conflict between federal and state law because the question when diversity is determined is a matter of federal law. Nor is there any contention that the application of Rule 3 to determine diversity of citizenship would violate the Constitution or the Rules Enabling Act.
 
 
 27
 The majority holds that the HCAO filing was the date of commencement of suit because "the HCAO proceeding continued to have effect when and after the case took on a completely judicial aspect," and "submission to the HCAO is a condition precedent to filing suit in federal court as well as state court." These observations may be accurate, but they provide no basis for disregarding the plain language of Rule 3.
 
 
 28
 The majority's holding is tinged with a further irony. The court could not exercise its subject matter jurisdiction at the time the HCAO claim was filed because exhaustion of the HCAO administrative process is a precondition of jurisdiction over a medical malpractice claim in Maryland. Davison, 462 F.Supp. at 780-781. Yet, under the majority's view, this date is the appropriate time to which a court, subsequent to exhaustion of administrative remedies, looks back in order to determine if the parties are diverse. Thus, the majority would have a federal court determine its jurisdiction with reference to a time at which it could not have sustained its jurisdiction.
 
 
 29
 Because I respectfully believe the majority's reasoning and result to be unsupported by law, and because I believe federal courts should apply the language of the Federal Rules of Civil Procedure, absent a compelling reason for a narrowing construction, I dissent.[1]
 
 
 
 [1]
 The nullification action which was accompanied by a Complaint was virtually identical with the medical negligence claim filed initially with HCAO
 
 
 [2]
 The defendants seek to controvert that fact, but in view of the result reached by the district court it never reached the issue. For reasons later appearing herein we need not and should not reach it either
 
 
 [3]
 The dissent suggests that Cannon v. Kroger, 832 F.2d 303 (4th Cir.1987), reh'g denied, 837 F.2d 660 (4th Cir.1988), supports its result. To the extent that Cannon is relevant, it simply supports a proposition to which the majority and dissent agree, viz., that a federal procedural question is involved in the present case. The dissent states "[Cannon ] lends support to the proposition that federal courts should apply the Federal Rules unless there is a compelling reason not to do so." We agree and have applied federal procedural law to the facts of the present case and have decided federally when the case "commenced" for purposes of determining diversity of the parties. That we measure diversity for that purpose by turning to an event occurring outside of a federal court makes ours no less a decision of federal procedural law for, in the same manner, federal procedural law requires, in cases removed from state court, that diversity exist at the time of commencement in state court as well as when the petition for removal is filed (i.e., at a time when commencement could only be by pertinent state rules). See 14A C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure, Sec. 3723, 311-14 (1985)
 
 
 [1]
 Judge Hall has called attention to a prior decision by this court, Cannon v. Kroger Co., 832 F.2d 303 (4th Cir.1987)
 In Cannon, plaintiff asserted that her suit under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, was commenced for the purpose of tolling the six-month statute of limitations when, in compliance with North Carolina Rules of Civil Procedure Rule 3, a North Carolina court issued a summons in response to plaintiff's application to file a state court complaint.
 A divided panel of the Fourth Circuit rejected that assertion. The majority held that the United States Supreme Court's decision in West v. Conrail et al., 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987), mandated the application of the Federal Rules to determine when the limitation period applicable to claims under Sec. 301 was tolled. The majority also held that the North Carolina state court summons was not the equivalent of a Federal complaint under Fed.R.Civ.P.Rule 8(a)(2), and that because a complaint within the meaning of Rule 8(a)(2) was not filed within the limitation period, the action was not commenced within that period under Fed.R.Civ.P.Rule 3.
 Although the facts and reasoning of Cannon are not identical, the decision lends support to the proposition that federal courts should apply the Federal Rules unless there is a compelling reason not to do so.