**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARIE BAXTER; HELEN SCAFIDI;
ESTATE OF LEO SCAFIDI,
<u>Plaintiffs-Appellants,</u>

v.

HOLY CROSS HOSPITAL OF SILVER
SPRING, INCORPORATED; MANOR

HEALTHCARE CORPORATION; STEPHEN
VACCAREZA, MD; STEPHEN HELLMAN,
MD; RONALD J. SCHUMACHER; KATHY
WATERS; AMY JACOBS; JANE DOE, II,
RN,
<u>Defendants-Appellees.</u>

No. 97-1453

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-1856-AW)

Argued: October 31, 1997

Decided: July 15, 1998

Before WIDENER and ERVIN, Circuit Judges, and BULLOCK,
Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed as modified by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Lee Shelnutt, Arlington, Virginia, for Appel-
lants. Michael Thomas Wharton, WHARTON, LEVIN, EHR-

MANTRAUT, KLEIN & NASH, P.A., Annapolis, Maryland; Leonard Thomas Hackett, JACOBSON, MAYNARD, TUSCHMAN & KALUR, Columbia, Maryland; Michael J. Baxter, SMITH, SOMERVILLE & CASE, Baltimore, Maryland, for Appellees. **ON BRIEF:** C. Russell Twist, Arlington, Virginia, for Appellants. Debra S. Block, WHARTON, LEVIN, EHRMANTRAUT, KLEIN & NASH, P.A., Annapolis, Maryland, for Appellees Holy Cross, Waters & Jacobs.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiffs, who are the widow, child, and estate of Leo Scafidi, sued Holy Cross Hospital and Silver Spring Manor Healthcare Corporation and various physicians and other health care providers on account of the death of Leo Scafidi in June, 1995. The district court dismissed all of their claims, and the plaintiffs appeal a part of the dismissals. Because the district court and the parties have considered affidavits and health records such as hospital records and physicians' and nurses' notes with respect to the care of Scafidi, we consider the action of the district court as on a motion for summary judgment unless otherwise indicated. We affirm, as modified.

Leo Scafidi was admitted to Holy Cross Hospital on May 13, 1995, suffering from kidney and cardiac problems. These are described as end-state renal disease, atrial fibrillation with rapid ventricular response, hypertension and chronic obstructive pulmonary disease. He was treated, and he received hemodialysis on Mondays, Wednesdays and Fridays until about June 1, 1995, when his wife, after consulting with his physician about difficulty with the dialysis procedure, determined that the dialysis treatment should be discontinued, which it was. Scafidi remained at Holy Cross until June 9, when, with Mrs.

2

Scafidi's consent, he was transferred to Manor Healthcare, a nursing home, where he died the next day. The Scafidis had been advised a day or so before by Holy Cross that Mr. Scafidi would not have to leave that hospital, but that from that point on, he would be responsible for his own bills.

Following Scafidi's death, the plaintiffs sued Holy Cross Hospital and Manor Health Care and, as well, various physicians and health care personnel who had been connected with Scafidi's treatment during his last illness.

In Count I,**1** the plaintiffs ask the court to hold that Maryland Code § 11-108 is unconstitutional, as it provides a cap on like personal injury judgments. The court held that the cap on damages was valid, and this is not appealed.

In Count II, the defendants were sued under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, referred to as EMTALA. The claim is that Scafidi was not stabilized within the meaning of the statute. The district court dismissed this claim, and the plaintiffs appeal.

The claims for abandonment of medical care, failure to treat, negligent treatment, and failure to treat a dermatological skin condition, Counts IV, V, VI and VII, the district court decided could not be pursued because they were medical malpractice claims which had not been processed under the Maryland Healthcare Malpractice Claims Act, Maryland Code Courts and Judicial Procedure§ 3-2A-02(a)(1). This decision of the district court is appealed.

The district court declined to exercise supplemental jurisdiction of the common law fraud claims, Count III, and this ruling is not appealed.

A.

Scafidi had been in Holy Cross Hospital from May 13, 1995 until

_____

**1** The numbering of the counts is our own.

3

June 9, 1995, when he was transferred to Manor Healthcare. He had received dialysis treatments until shortly before June 1, 1995, a period of something more than two weeks. The decision to discontinue the dialysis treatments, which may be characterized as the core of the complaint in this case, was made by Mrs. Scafidi, after consultation with her husband's physician who had attended Scafidi while in the hospital, so there cannot be any colorable contention that his condition had not been stabilized within the meaning of EMTALA.

We are unable to find any meaningful distinction between this case and Bryan v. Rectors and Visitors of Univ. of Virginia, 95 F.3d 349 (4th Cir. 1996), in which, as here, the hospital had entered a do-not-resuscitate order, although in that case the hospital's order in question was against the family's wishes instead of with the consent of the wife, as here. In Bryan, we relied on the fact that the only actions by the hospital claimed to be violations of EMTALA began with the entry of the anti-resuscitation order. Here they began with the cessation of dialysis treatment. In Bryan, we noted that the decedent received stabilizing treatment for 12 days, just as Scafidi in our case received stabilizing treatment for something over two weeks. Just as Bryan held there was no liability under EMTALA, we are of that opinion in this case.

Vickers v. Nash General Hospital, Inc., 78 F.3d 139 (4th Cir. 1996), is in accord with our decision, and we apply those principles here. In Vickers, we stated that "[q]uestions regarding whether a physician or other hospital personnel failed properly to diagnose or treat a patient's condition are best resolved under existing and developing state negligence and medical malpractice theories of recovery," 78 F.3d at 142, and that "[c]laims or misdiagnosis or inadequate treatment are left to the state malpractice area." Thus, we affirm the entry of summary judgment in favor of the defendants on the claim under EMTALA.

B.

We affirm the district court's dismissal of the claims for abandonment of medical care, failure to treat, negligent treatment, and failure to treat a dermatological skin condition as medical malpractice claims, which must first be processed under the Maryland Healthcare

4

Malpractice Claims Act, Maryland Code Courts and Judicial Procedure § 3-2A-02(a)(1). See Davison v. Sinai Hospital of Baltimore, Inc., 617 F.2d 361 (4th Cir. 1980), affirming, on the opinion of the district court, Davison v. Sinai Hospital, 462 F.Supp. 778 (D.Md. 1978). But the dismissal of the state malpractice claims should be without prejudice. Davison, 462 F.Supp. 781. To that extent the judgment of the district court is modified.

C.

The defendants have asserted other defenses which may well have validity, but we express no opinion upon them here.

The judgment of the district court is accordingly

AFFIRMED AS MODIFIED.[2]

_____

[2] On April 17, 1998, the defendants, Hellman, Vaccarezza, and Schumacher, notified us of the insolvency of their insurance company, PIE Mutual Insurance Company, as found by the Court of Common Pleas, Franklin County, Ohio, on March 23, 1998. They take the position that under Maryland Code, Insurance Article, § 9-315(a), all proceedings in this matter should be stayed for a period of not less than 60 days from March 23, 1998. The other defendants did not oppose such a stay, however the plaintiffs did.

Accordingly, we have taken no action in the case until the date of the filing of this opinion, and the purpose of the motion has been achieved. The motion is dismissed as moot.