Katherine M. LEWIS, Plaintiff

v.

Jeremy P. WALETZKY,
M.D., Defendant.

Civil No. PJM 07 CV 2154.

United States District Court,
D. Maryland.

Aug. 12, 2008.

Paul Mccourt Curley, Canfield Baer Heller and Johnston LLP, Richmond, VA, Wayne Thomas Prem, Richard P. Rieman, Jr., The Law Offices of Wayne T. Prem PC, Towson, MD, for Plaintiff.

Kenneth Armstrong, Erica C. Mudd. Armstrong Donohue Ceppos and Vaughan Chtd., Rockville, MD, for Defendant.

## OPINION

PETER J. MESSITTE, District Judge.

Katherine M. Lewis, a resident of the State of Minnesota, has sued Jeremy P. Waletzky, M.D., a physician residing in the District of Columbia and licensed to practice in the State of Maryland, for medical malpractice. Waletzky has filed a Motion to Dismiss the Complaint on the grounds that Lewis has not filed her claim with the Maryland Health Care Alternative Dispute Resolution Office pursuant to the Maryland Health Claims Act. Md.Code Ann., Cts. & Jud. Proc. § 3–2A–01, *et seq.* (2006 Repl.Vol., 2006 Cum.Supp.), which Waletzky argues is a prerequisite to suit in this Court. Having considered the parties' arguments, the Court GRANTS the Motion to Dismiss without prejudice.

### I.

As set forth in the Complaint, the relevant facts are these:

Waletzky was a physician licensed to practice in the State of Maryland, whose office was located in Chevy Chase, Maryland. From approximately October 2000 until January 2005, Waletzky was Lewis' psychiatrist. Waletzky prescribed for her several psychotropic medications, including antidepressants and stimulants, and antipsychotic and/or neuroleptic drugs. Although all of Lewis' appointments with Waletzky took place at his office in Chevy Chase during the time frame at issue, Lewis, who at all relevant times resided in the District of Columbia, filled the prescriptions written by Waletzky at pharmacies located in the District, and took the prescribed medications while within the physical boundaries of the District.

During the period of treatment, Waletzky did not diagnose Lewis with any serious mental disorder. When Lewis began to experience adverse side effects from the antipsychotic drugs, she discontinued using them. Immediately thereafter, however, she suffered, for the first time in her life, an anxiety attack and, as a result, contacted Waletzky. Waletzky instructed Lewis to resume taking the antipsychotic drugs, and wrote an additional prescription in order that she might "taper off" their side effects. But even after taking the new prescription, Lewis continued to suffer from side effects, including "extreme jaw tension and clenching, and anxiety." After completely withdrawing from the antipsychotic drugs, Lewis' side effects persisted and worsened. Ultimately, Lewis was diagnosed with Tardive Dykinesia/Dystonjia, a permanent neurological disorder.

Lewis thereafter filed the present action for medical negligence in this Court, asserting that the drugs Waletzky prescribed were inappropriate for her condition. In addition, she has accused Waletzky of failing to conduct adequate physical examinations, including performing necessary laboratory work, and failing to prop-

erly inform her about the risks of Tardive Dyskinesia/Dystonia or other risks associated with the use of antipsychotic drugs.

## II.

In his Motion to Dismiss, Waletzky submits that the Maryland Health Claims Act requires Lewis to file her claims with Maryland's Health Care Alternative Dispute Resolution Office ("HCADRO")[1] as "a condition precedent" to bringing a legal action against him in this Court. *See* Md.Code Ann., Cts. & Jud. Proc. § 3–2A–02; *Rowland v. Patterson*, 882 F.2d 97, 97 (4th

Cir.1989). While Lewis concedes that she has not complied with the provisions of the Act, she asserts that Maryland's choice of law rule in tort cases, *i.e., lex loci delecti,* requires the Court to apply the law of the District of Columbia, such that she is not required to adhere to Maryland's health care arbitration procedure in order to pursue her medical malpractice claim before this Court.[2]

## III

In an action based upon diversity of citizenship, a district court must apply

---

1. Previously the Health Claims Arbitration Office. *See* Md.Code Ann., Cts. & Jud. Proc. § 3–2A–01 (Ed. Notes) ("Section 5, ch. 5, 2004 Sp. Sess. provides that on the effective date of this Act, the Health Claims Arbitration Office shall be renamed the Health Care Alternative Dispute Resolution Office.")

2. The Court assumes, for the sake of argument only, that the appropriate substantive law in this case is the law of the District of Columbia, That proposition is open to serious question. *See Farwell v. Un*, 902 F.2d 282, 286–87 (4th Cir.1990) (relying on a "common sense" approach to the classic *lex loci* rule as one of two factors supporting the Court's conclusion that the substantive law of Maryland, the state in which the physician's alleged negligent conduct took place, should control rather than the law of Delaware, where the last act required to complete the tort occurred, *i.e.,* the patient's suicide) (quoting *Restatement of Conflict of Laws* § 380(2) (1934)) ("Where the law of the place of wrong, the liability-creating character of the actor's conduct depends upon the application of a standard of care, and such standard has been defined in particular situations by statute or judicial decision of the law of the place of the actor's conduct, such application of the standard will be made by the forum."); *Adams v. Harron*, 191 F.3d 447, 1999 WL 710326, *1–2 (4th Cir.1999) (holding that for purposes of *lex loci delicti,* the plaintiff's injury occurred in West Virginia where the defendant doctors' relevant conduct occurred, rather than in Kentucky where the plaintiff resided and learned that he had cancer); *Bledsoe v. Crow-*

*ley*, 849 F.2d 639, 646–47 (D.C.Cir.1988) (Williams, J. concurring) (reasoning that application of the law of the jurisdiction where services are rendered, rather than the domicile of the patient, better accommodates "systemic values" by helping states that "seek to reduce medical costs by reducing the burden of malpractice liability ... to assure providers that the state's rules will apply to all (or virtually all) cases," and positing that if the state's medical providers are exposed to liability under the laws of states without such controls, providers will likely raise their charges to offset the burden of expected liability for out-of-state patients or may "screen out [out-of-state] patients altogether [which] would completely destroy individuals' ability to seek out expert medical help throughout the United States."). At the same time, it may be questioned whether the substantive law of the District of Columbia as to the standard of care in a medical malpractice case such as this is significantly different from that of Maryland. *See Lawson v. U.S.,* 454 F.Supp.2d 373, 416 n. 53 (D.Md.2006) (holding that under Maryland law, a physician's treatment is evaluated against a national, not a local, standard of care) (citing *Shilkret v. Annapolis Emergency Hospital Ass'n.,* 276 Md. 187, 349 A.2d 245, 252 (1975)); *Hill v. Medlantic Health Care Group*, 933 A.2d 314, 325 (D.C.2007) ("Through expert testimony regarding the applicable *national standard of care,* the plaintiff must establish, the course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances.") (internal citations and quotations omitted) (emphasis added).

the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Generally speaking, Maryland adheres to the *lex doci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in tort. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 648–49 (2007); *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 911 A.2d 841, 844 (2006); *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir.1999). Under *lex loci delicti*, the law of the state where the tort or wrong was committed applies. *Hood*, 911 A.2d at 844. Where the events giving rise to a tort action occur in more than one state, the court must apply "the law of the State where the injury—the last event required to constitute the tort—occurred." *Heffernan*, 925 A.2d at 649; *see also Hood*, 911 A.2d at 845. Similarly, Section 377 of the First Restatement of Conflict of Laws states that "[t]he place of the wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement (First) of Conflict of Laws § 377 (1934).

▆▆ Because Lewis' alleged injuries occurred in the District of Columbia— where she alleges she filled all her prescriptions, took the prescribed drugs and subsequently developed deleterious side effects—under strict application of Maryland's doctrine of *lex loci delecti*, the law of the District of Columbia would ordinarily be applied.[3] The Maryland Court of Appeals, however, has recognized a public policy exception to this general rule. *Lab.*

*Corp. of Am.*, 911 A.2d at 849 (extending the public policy exception to *lex loci delicti* to tort causes of action). Under this exception, the law of Maryland will be applied if application of the law of the place of the injury violates a "clear, strong, and important Maryland public policy." *Id.* at 849–51 (After citing *Reed v. Campagnolo*, 332 Md. 226, 630 A.2d 1145 (1993), in which the court found that individuals have a right to bring a wrongful birth action, and Maryland Code Section 20–209(b) of the Health–General Article, which precludes the government from intervening with a woman's choice to end a pregnancy when "the fetus is affected by [ ] defect or serious deformity or abnormality," the Court of Appeals concluded that, if applying the law of North Carolina, the place of the injury, would preclude a plaintiff's wrongful birth action, "we would hold that aspect of North Carolina law to be contrary to clear, strong, and important Maryland public policy and would not apply it.").

The Maryland Health Claims Act reflects Maryland's strong public policy that medical malpractice claims alleging damages in excess of a certain jurisdictional amount[4] should be subject to arbitration and other prerequisites prior to being litigated in court. *See Group Health Assoc. v. Blumenthal*, 295 Md. 104, 453 A.2d 1198, 1204 (1983) ("The goal of the [Medical Malpractice Insurance Study] Committee's proposals was to establish a 'mechanism to screen malpractice claims prior to the filing of suit.' In the Committee's view, this would reduce the cost of defense by ferreting out unmeritorious claims which, in

---

**3.** *But see supra* note 2.

**4.** *See* Md.Code Ann., Cts. & Jud. Proc. § 3–2A–02(a)(1) ("All claims ... by a person against a health care provider for mental injury allegedly suffered by the person in which damages of more than the limit of the concur-

rent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle."). The parties do not dispute that the damages alleged in this case exceed the jurisdictional amount under the Act.

turn, would lower the cost of malpractice insurance, and potentially, overall health care costs. The Committee's proposed § 3–2A–02(a) was enacted verbatim in . . . the Act of 1976") (quoting *Medical Malpractice Insurance Study Committee Report to the President of the Senate and the Speaker of the House* ) (internal citations omitted); *see also Carrion v. Linzey*, 342 Md. 266, 675 A.2d 527, 535 (1996) ("[T]he General Assembly was aware of the broad range of legislative choices it faced in creating the Health Claims Arbitration system . . . [and] chose [to make] success on judicial review more difficult for the party that lost at the arbitration panel . . . [thereby indicating] a strong preference to dispose of a majority of medical malpractice cases in the arbitration system and minimize the number of cases brought to trial in the traditional tort system."); *Davison v. Sinai Hospital of Baltimore, Inc.*, 462 F.Supp. 778 (1978), *aff'd* 617 F.2d 361 (4th Cir.1980) (noting that the Act was passed as the Maryland General Assembly's response to the "medical malpractice crisis" and that other United States District Courts have interpreted similar statutes as requiring arbitration prior to filing in federal court).

Although the Act has been amended to allow a plaintiff to unilaterally waive the Act's arbitration requirement, the Act still requires a potential plaintiff to file her claim and a certificate of qualified expert with HCADRO and to follow specific procedures for waiver of arbitration *prior* to

filing her claim in state or federal court. *See Tranen v. Aziz*, 304 Md. 605, 500 A.2d 636, 639 (1985) (holding that the Act creates a condition precedent to the institution of a court action); *Davison*, 462 F.Supp. at 779 (holding that the Act was not intended to except federal courts exercising diversity jurisdiction from its provisions); *Goodwich v. Nolan*, 343 Md. 130, 680 A.2d 1040, 1050 n. 13 (1996) ("[waiver of arbitration] may be accomplished unilaterally, by either the claimant(s) or defendant(s), after the claimant has filed the certificate of qualified expert required by § 3–2A–04(b)"); *see also* Md.Code Ann., Cts. & Jud. Proc. §§ 3–2A–04(a) & (b)(1), 3–2A–06B.[5] In maintaining the certificate requirement as a prerequisite to waiver of arbitration, the Maryland General Assembly reiterated its intention to use the Act's procedural requirements as a means of reducing the number of medical malpractice cases brought to trial. *See D'ANGELO v. St. Agnes Healthcare, Inc.* 157 Md. App. 631, 853 A.2d 813, 822 (2000) (the purpose of the certificate requirement "reflects the Maryland General Assembly's desire to weed out, shortly after suit is filed, nonmeritourious medical malpractice claims."), *cert. denied*, 384 Md. 158, 862 A.2d 993 (2004).

Were there any doubt that, based on the strong public interest it reflects, the Maryland Health Claims Act should apply in this case, the Court need look no further than the District of Columbia itself and the

---

**5.** Section 3–2A–04(a) provides in relevant part that "a person having a claim against a health care provider for damage due to a medical injury shall file the claim with the Director [of the Health Care Alternative Dispute Resolution Office]." Section 3–2A–04(b)(2) requires the plaintiff to file a certificate of qualified expert "attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." Other provisions of § 3–2A–04 specify the procedures

by which an arbitration panel is thereafter constituted. Section 3–2A–06A provides that at any time prior to a hearing, the parties may mutually agree to waive arbitration of the claim and bring the case in the appropriate Maryland circuit court or United States District Court. Section 3–2A–06B also allows a plaintiff to waive arbitration without the consent of defendant but only after she "has filed the certificate of qualified expert required by § 3–2A–04(b)."

case of *Bledsoe v. Crowley,* 849 F.2d 639 (D.C.Cir.1988). Bledsoe, who at one point was a District of Columbia resident, consulted two Maryland psychiatrists whose residence and practices were in Maryland. All of Bledsoe's therapy sessions took place in Maryland. After years of therapy, it was discovered that Bledsoe had a brain tumor which had been present and growing for many years. Despite removal of the tumor, permanent sequelae resulted and Bledsoe sought to hold the psychiatrists accountable for failure to diagnose the brain tumor. Suit based on diversity jurisdiction was then brought in the United States District Court for the District of Columbia where the key initial question was whether the Court should apply the Maryland statute requiring arbitration of medical malpractice claims. Applying a "governmental interest analysis" as its choice of law rule:

> The District Court resolved the conflict in favor of the application of Maryland law by determining that *Maryland, through passage of the arbitration statute, had manifested a strong public policy concerning the manner in which malpractice claims should be resolved.* It found that the District of Columbia, by contrast, had expressed no such interest, because it had adopted no legislation on the subject. The District Court thus decided that there was no true conflict, and that since no other factor outweighed Maryland's strong interest, Maryland law should be applied.

*Bledsoe,* 849 F.2d at 641–42 (emphasis added).

The D.C. Circuit affirmed the District Court's decision that made Maryland's arbitration procedures applicable to suit in that court, all of which is to say that even had Lewis filed the present suit in the District of Columbia, she would have been obliged to first comply with the Maryland Health Claims Act. Ironically, she seeks to file in Maryland, but without having to comply with the Maryland Act.

■ The Court holds that, pursuant to the public policy exception to *lex loci delicti,* the law of the State of Maryland applies, and Lewis is required to have complied with the Act's mandatory requirements in order to maintain suit in this Court, which she has not done.

### IV.

The Court is aware that in *Davison v. Sinai Hospital of Baltimore, Inc.* the Fourth Circuit, *inter alia,* endorsed the reasoning of the District Court that the preconditions to suit required by the Maryland Health Claims Act are "substantive" rather than "procedural," which Lewis would presumably argue means that Maryland's substantive law should not apply to a tort the final element of which (damages) is said to have occurred in the District of Columbia. 617 F.2d at 362. But the District Court in *Davison* reached this conclusion so to advance the underlying policy of the *Erie* doctrine, specifically that (1) the character or result of litigation should not differ materially because the suit was brought in federal court, and (2) incentives to forum shopping should be avoided, on the supposition that federal courts might apply law different from that of the state courts. 462 F.Supp. at 780 (concluding that while the Act's provisions may not ultimately affect the outcome of litigation, the character of litigation would differ drastically if plaintiffs in Maryland state courts were required to submit their claims to an arbitration panel prior to bringing suit but plaintiffs in the United States District Court of Maryland were not, because the Act "change[s] the initial stages of litigation and ultimately of the trial, given that the findings of the panel are admissible in a trial de novo.") (citing *Hanna v. Plumer,* 380 U.S. 460, 467, 85

S.Ct. 1136, 14 L.Ed.2d 8 (1965)). But in any event this Court need not grapple with distinctions between substance and procedure in the present case. The Maryland district court, affirmed by the Fourth Circuit, has held that the requirements of the Act apply to medical malpractice suits that are brought before this Court and that precedent the Court will follow.

## V.

Lewis suggests that, even if the Court holds that she must comply with the Maryland Health Claims Act's preconditions to suit, dismissal of her action is not appropriate. She characterizes Waletzky's Motion as seeking dismissal for failure to exhaust administrative remedies and argues that failure to exhaust administrative remedies is not a jurisdictional prerequisite to suit in federal court. She submits that this action is properly before this Court pursuant to 28 U.S.C. § 1332, diversity of citizenship jurisdiction, since she currently resides in and is a citizen of the State of Minnesota, Waletzky is a resident of the District of Columbia, and her claim for relief exceeds the jurisdictional amount.

The Maryland Court of Appeals has taken a strong position to the contrary, holding that dismissal without prejudice is appropriate precisely under such circumstances as these. *E.g., Oxtoby v. McGowan*, 294 Md. 83, 447 A.2d 860, 864–65 (1982) (holding that, while the statute does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims which fall within the Act, "the [Maryland] General has forcefully expressed in § 3–2A–04(a) [the provision requiring a plaintiff to first file her claim with HCADRO] its intent that this condition precedent be satisfied," and noting that "[s]o strong is this public policy that this Court will, *sua sponte*, ... order an action dismissed where the litigants have not followed the special statutory procedure"); *see also Tranen*, 500 A.2d at 639–40 (stating that "while failure to adhere to the Act's provisions 'does not divest the circuit court of subject matter jurisdiction to hear a dispute involving a health claim, it creates a condition precedent to the institution of a court action,' and affirming the circuit court's dismissal of plaintiffs' action after finding that appellants failed to comply with the Act's judicial review provisions"); *but see Jewell v. Malamet*, 322 Md. 262, 587 A.2d 474, 481 (1991).

The Court accepts the rationale of the Maryland Court of Appeals with respect to the handling of cases such as these.

## VI.

Accordingly, Waletzky's Motion is GRANTED insofar as it argues that Lewis cannot maintain her claim for medical malpractice in this Court until she meets the requirements of the Maryland Health Care Malpractice Claims Act. Her claim therefore is DISMISSED WITHOUT PREJUDICE.

A separate Order will issue.

### *ORDER*

It is for the reasons stated in the accompanying Memorandum Opinion this 12th day of August, 2008

ORDERED

1. Defendant's Motion to Dismiss [Paper No. 5] is **GRANTED;**

2. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE;** and

4. The Clerk of the Court is directed to **CLOSE** this case.